RHEA v. COOK.   (No. 8081.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 23, 1915. Rehearing Denied March 6, 1915.)

1. EVIDENCE ⬦563 — HANDWRITING EXPERT —QUALIFICATION.

Where an alleged handwriting expert testified that he was not an expert, but also testified that he had worked for 1½ years as a bank clerk, and had been engaged for a number of years in teaching in writing schools and commercial and business schools, where he had been required to study handwriting in signatures, such witness' testimony was admissible on the point of the genuineness of a signature; the determination of his qualifications being solely for the court, and his declaration on the point being without effect.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2347, 2383, 2384; Dec. Dig. ⬦ 563.]

2. WITNESSES ⬦374 — INTEREST — IMPEACHING EVIDENCE.

In an action on a note, evidence that defendant had frequently secured liquors from witness' saloon without paying therefor was admissible, as showing that defendant owned the saloon, that the witness was merely her employé, and that his testimony was therefore interested.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1201, 1202; Dec. Dig. ⬦374.]

3. WITNESSES ⬦374—INTEREST—IMPEACHING EVIDENCE.

In an action on a note, where the officers of a bank had testified for defendant to the effect that the signature of the note was a forgery, evidence that defendant was indebted to the bank in a large sum, and that defendant's testator, who had executed the note, had left an insolvent estate, was admissible, as showing the interest of the bank officers for defendant in the controversy.

[Ed. Note.—For other case, see Witnesses, Cent. Dig. §§ 1201, 1202; Dec. Dig. ⬦374.]

4. APPEAL AND ERROR ⬦1046—HARMLESS ERROR—REMARKS OF JUDGE.

In an action on a note, where certain returned checks of the maker were being exhibited for comparison, where the judge said, on objection by defendant's counsel: "In testing the witness, I can understand a return check paid by the bank and ratified and approved by him, and now then he claims to know Maxey's [the maker's] signature, and I think he [plaintiff] ought to have a right to determine whether he does know it or not. He wouldn't have to determine that if he cashed the check, and returned it to Maxey, and Maxey accepted it. I wouldn't admit in evidence at all before the jury a signature that is not accepted as Maxey's genuine signature for comparison; but he is testing the witness' knowledge of the signature, and I presume they will follow up that, and, acting on that phase, I am permitting them to do that"—although it is advisable for the judge to confine himself to a simple negative or affirmative in his rulings in the presence of the jury, such remarks were not error, where both signatures and letters in evidence were shown

conclusively to be those of the maker of the note.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4128–4131, 4134; Dec. Dig. ☞1046.]

5. DEPOSITIONS ☞90 — ADMISSIBILITY — DEPONENT WITHIN COUNTY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3649, providing that the deposition of a witness may be taken in all civil suits, whether or not the witness resides in the county where suit is brought, and article 3677, providing that depositions may be read in evidence subject to all legal exceptions which might be made if the witness were personally giving evidence, in a suit on a note, depositions of a witness residing in the county of trial were admissible in evidence.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 248–255, 258–260; Dec. Dig. ☞90.]

6. BILLS AND NOTES ☞501—TESTIMONY AS TO DRUNKENNESS OF PLAINTIFF—ADMISSIBILITY IN EVIDENCE.

In an action on a note, evidence was properly excluded that plaintiff drank considerably, and sometimes got drunk, while working for the maker of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1698–1707; Dec. Dig. ☞501.]

7. BILLS AND NOTES ☞504—NOTE TO SECURE LOAN—EVIDENCE SHOWING POSSIBILITY OF LOAN.

Where plaintiff had worked for the maker of the note in suit, evidence that his employer had been in the habit of giving him all his old clothes was admissible in rebuttal of evidence tending to show that plaintiff's family were so numerous that all his salary must have been consumed in supporting them, so that he could not have made the loan which he alleged the note in suit was given to secure.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1719–1727; Dec. Dig. ☞504.]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Action by R. L. Cook against Mrs. Annie W. Rhea. Judgment for plaintiff, and defendant appeals. Affirmed.

Gross & Gross and W. H. Penix, all of Mineral Wells, for appellant. Moyers & Creighton and Ritchie & Cousins, all of Mineral Wells, for appellee.

CONNER, C. J. Appellee instituted this suit against Annie W. Rhea, appellant, as independent executrix of the estate of J. H. Maxey, deceased, to recover upon a promissory note purported to have been given by J. H. Maxey on the 1st day of December, 1908. The note was for the sum of $2,200 and due on the 1st day of February, 1912. Appellant, who is the surviving wife of J. H. Maxey, defended upon the ground that the note was a forgery; but a trial before a jury resulted in a judgment against her, and she has appealed.

[1] On the trial M. E. Adams was permitted to testify that the note in question, and the signature thereto, were written in an easy, natural hand, and therefrom he gave it as his opinion that the signature was a genuine one. He was further permitted to testify that in his opinion the signature to the note was the same as the signature to certain checks exhibited to the witness for the purpose of a comparison. To the witness so testifying it was objected that it had not been shown that he was qualified as an expert. While it is true the witness testified that he was not an expert, it further appeared, on questions relating to his qualification, that he had served as a clerk in a bank for 1½ years, and thereafter for a number of years had been engaged in teaching in writing schools and commercial business schools, during all of which time it had been part of his business to observe and study handwriting and signatures and the manner in which they were made, and we think the court was correct in his conclusion that the court, and not the witness, was the judge of whether or not he manifested such knowledge of the subject as to authorize the introduction of his testimony. The objections, in the light of the evidence, go rather to the weight of his testimony than to its admissibility, and we see no reason to disturb the discretion exercised by the court in the ruling. The first, second, and third assignments are accordingly overruled.

[2] Objection was also urged to the testimony of one Garrison. Garrison, among other things, testified that he was the present owner of the saloon formerly owned and operated by the deceased, Maxey, and further testified to the effect that, at a date subsequent to the date of the note, Cook, who had been one of Maxey's barkeepers, stated to Maxey in the witness' presence that he (Maxey) was not indebted to him in any sum. Thereafter, upon cross-examination, he was required to testify, over appellant's objection that the testimony was "irrelevant, immaterial, and incompetent," that she and Mr. Rhea, with whom she intermarried after Maxey's death, frequently got liquors out of the saloon and took them home; that they were neither paid for nor charged. As appears from the trial court's explanation to the bill of exception, the testimony was admitted merely on the issue of the witness' interest; the plaintiff in the suit endeavoring to show that as a matter of fact the witness Garrison was not the owner of the saloon, but merely an employé of defendant. We think the testimony was relevant to the issue stated by the court, and the fourth assignment, raising the question, must be overruled.

[3] The fifth assignment will be overruled, for the same reason as the fourth; the objection there raised being to the court's action in requiring appellant to testify on cross-examination that she was indebted to the Mineral Wells Bank in an amount something over $4,000. As appears from the court's explanation of the bill of exception, it was admitted in open court by counsel for appel-

lant that Mrs. Rhea owed said bank some $4,-500, and it was further shown that the president, cashier, and other officers of the bank had testified as witnesses, among other things, that the signature to the note sued on was not the signature of J. H. Maxey. It was also further shown that the Maxey estate had not sufficient property to pay all of its debts, and the court admitted, as he certifies, the evidence objected to as tending to show the interest of the officers of the bank so testifying.

[4]·In the sixth assignment it appears that objection was made to certain remarks of the court. It appears that C. M. Smith, an officer or employé of the bank referred to in the fifth assignment, testified that he knew J. H. Maxey's signature, and identified numerous checks of Maxey that had passed through the bank, and which were presented in court as instruments of comparison. The counsel for appellee, on cross-examination, was permitted to exhibit one or more of the checks with the signature alone apparent, or with perhaps a letter of the signature alone apparent, and the court certifies that to this action counsel for appellant in a heated and earnest manner was making objection, and that in explanation of his ruling the remarks in question were made. The remarks of the court were:

"In testing the witness, I can understand a return check paid by the bank, and ratified and approved by him, and now, then, he claims to know Maxey's signature, and I think he [plaintiff] ought to have a right to determine whether he does know it or not. He wouldn't have to determine that if he cashed the check, and returned it to Maxey, and Maxey accepted it. I wouldn't admit in evidence at all before the jury a signature that is not accepted as Maxey's genuine signature for comparison; but he is testing the witness' knowledge of the signature, and I presume they will follow up that, and, acting on that phase, I am permitting them to do that."

While it is perhaps in most instances advisable for the trial court to follow the scriptural injunction of "yea, yea," and "nay, nay," in his communications in the presence of the jury, yet we fail to find in the remarks now under consideration any such comment on the weight of the evidence as urged, or any such prejudicial result as we think under the circumstances should require a reversal of the case. The court further certifies that after the cross-examination permitted, and after the witness had pronounced one or more of the signatures and one or more of the letters of the signature submitted to him not to be Maxey's, both signature and letters were shown conclusively to be his, and that after the removal of the obstruction of the other writing accompanying the signature the witness so admitted. In this connection, and for like reasons, we overrule the complaint made of the court's remarks as shown in the tenth and eleventh assignments of error.

[5-7] We think it was within the discre-tion of the court to admit the deposition of H. D. Arnold, notwithstanding the fact of his residence in the county of the trial. See Vernon's Sayles' Tex. Civ. Stat. arts. 3649 and 3677, and notes. We also think the court properly excluded as immaterial the testimony of Ed Haman, to the effect that appellee "drank considerably, and sometimes got drunk, while working for John Maxey." The same witness' testimony, to the effect that "Maxey gave Mr. Cook his old clothes all the time," seems unobjectionable, in view of the court's explanation, to the effect that it was admitted in rebuttal of evidence in behalf of appellant tending to show that from the numbers constituting Cook's family, from the amount of his salary, etc., that all of his earnings were consumed in living ex·penses.

The twelfth, thirteenth, and fourteenth assignments are so manifestly without merit that we will not discuss them.

It is accordingly ordered that all assignments be overruled, and the judgment affirmed.