## CITY OF HOUSTON v. PILLOT et al.
### No. 9976.

Court of Civil Appeals of Texas. Galveston.
June 22, 1934.

Rehearing Denied July 12, 1934.

See, also (Tex. Civ. App.) 51 S.W.(2d) 794.

R. R. Lewis, Geo. D. Neal and Wm. M. Holland, all of Houston, for appellant.

Ernest H. Folk, Blanchard & Woodul, Campbell, Myer & Myer, and Jacob F. Wolters, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a condemnation proceeding instituted by appellant against appellees to condemn for street purposes a strip of land 80 feet in width and 416.85 feet long over and through a tract of 4.75 acres owned by appellees and situated in a business section of appellant city. This strip contains 33,348 square feet of land.

The 4.75 acres of land, which were purchased by appellees about 8 years before the institution of these proceedings, is located in the South End district of the city and is bounded on the north by Main street, and on the south by Milam street. At the time of its purchase no street ran through it, and it was fenced and used by its then owners as a cow pasture.

Appellees, after purchasing this tract of land, proceeded to lay out and build thereon a large retail grocery establishment with large parking areas for automobiles in connection therewith; this being one of the first, if not the very first, institution of its kind in this country. Appellees laid out and paved entrances and exits into their property; two of said entrances and exits lead into Milam street and one of said entrances and exits leads into Main street, and another of its entrances and exits leads north from the store building to the south end of North Travis street where it abutted appellees' property. At this point, that is, where the south end of Travis street abutted appellees' property, a wooden gate was erected and maintained across the said entrance and exit. Appellees built a large store building near the center of their said 4.75 acres, and provided large paved parking areas for the accommodation of their customers' automobiles; the said parking areas being in front of and to each side of their said store. During the daytime the gate across the south end of Travis street above referred to was left open so that customers could enter in their automobiles for the purpose of trading at the appellees' grocery store, but during the nighttime this gate was kept closed. On the south side of appellees' said tract of land where it abutted the north end of South Travis street, there was erected a permanent wooden fence with a large sign painted thereon, reading as follows: "Private Prop-

erty—This Street Not Open." Appellees had ever since the establishment of their said South End Grocery Store operated it successfully and profitably with the north gate leading into the south end of Travis street open every day during the daytime and closed every night during the nighttime, and with the said fence across the north end of Travis street where it abutted the appellees' property.

On or about the 26th day of March, 1928, appellant city of Houston, deciding to open Travis street through appellees' property, commenced negotiations with appellees with the end in view of purchasing the 33,348 square feet of land required for the opening of Travis street, but as appellant and appellees were unable to agree upon the value of the land which the appellant city required, the appellant on August 26, 1930, filed a petition with the county court of Harris county asking that commissioners be appointed to assess the value of the 33,348 square feet described in said petition, and the damage, if any, which would result to appellees by reason of the taking of said 33,348 square feet of land belonging to them. Thereafter, the county court appointed special commissioners to decide the value of the 33,348 square feet of land desired by the appellant for street purposes and the damage, if any, that would accrue to appellees by reason of the taking of said 33,348 square feet of land.

The commissioners, after due hearing, on November 10, 1930, made an award fixing the value of said land and the damage to the remainder at $100,000.

Both appellant and appellees within ten days after the award of commissioners filed exceptions to the award and appealed to the county court. Appellees admitted in the court below appellant's right to condemn, and were thereupon given the right to open and close the evidence and argument.

This is the second appeal of the case; the opinion of this court on the first appeal, from which most of the above statement is copied, is reported in 51 S.W.(2d) 794.

On the trial from which this appeal is prosecuted the jury found that the value of the property sought to be condemned was $62,432, and that the decrease in value of the remainder of the property of appellees for the purposes for which it was being used by them caused by making the condemned strip a public street of the city was $25,745.

Appellant assails the verdict and the judgment rendered thereon by nine propositions presented in its brief. The first five of these propositions complain of a statement read to the jury by the direction of the court during the examination of appellees' witness, R. C. Burrows. This statement is here copied in full: "The Court will make a statement to the jury in connection with the testimony of the witness R. C. Burrows, in connection with the question propounded to the witness, R. C. Burrows, by counsel for the land owners, Pillot, et al., inquiring of the witness an explanation of why his testimony of average value for the land sought to be condemned of $3.28 differs from the testimony given by the witness at the previous trial of this case, wherein he was asked if he had not fixed the market value of the land sought to be condemned at $2.50 per square foot. In connection with this testimony of this witness, especially relative to the question propounded to him in regard to his testimony on the previous trial of this case, the Court make the following statement to the jury: When this case was tried previously, a year and a half ago, the witness, R. C. Burrows, as well as other witnesses, testified in regard to the market value of the land here inquired about, at the time of said trial, the case was tried upon the theory, and the witnesses were examined in regard to the market value of the particular area, approximately 80x417, or 33,348 square feet herein sought to be condemned, and the witness testified in regard to the market value of said particular area as a part of a larger tract of approximately 4.75 acres. The Court of Civil Appeals in its opinion has held that the jury should have been instructed that in arriving at the value of the strip of land, they should first ascertain the market value of the entire tract of appellants' land across which a strip was to be taken, without considering the value of the improvements thereon, for any use for which it was reasonably adaptable, and to fix the value of the strip at its proportionate part of the value of the whole. This statement is made to the jury, in order that they might know that the case is being tried at this time upon a different theory in arriving at the market value of the property sought to be condemned than the theory upon which it was tried at the previous trial hereof, and at which trial, the method of arriving at the market value was by the Court of Civil Appeals held to have been wrong, and not a proper method of arriving at the market value of land in condemnation cases wherein a part of an owner's land is taken."

Appellant's attorneys objected to the action of the court in having the statement read to the jury, on the grounds:

First. That it was a general charge when the case was to be submitted upon special issues.

Second. "The language of the Court is highly prejudicial to the rights of the City of Houston, in that it assumes that witnesses will testify upon the present trial, and injects into the case the testimony of witnesses on the former trial, which witnesses have not testified at this time in this trial. That it undertakes to give to the jury what the higher court has held with reference to the law, which is improper and could not be given in any court in a general charge, much less in a case that is submitted upon special issues.

"For the further reason that the language of the court is a comment upon the weight of the evidence and invades the province of the jury, and injects into this case the results of the other trial and is calculated to make this jury believe and consider that the results of another trial, which are not pertinent to this case, are highly prejudicial as to what the jury did in another case under another state of facts could not be, for any purpose, admissible in this case, and is calculated to lead the jury to believe that the verdict of the jury in another case is to be considered by them in this case as having been wrong, when the evidence—when the jury arrives at their verdict in the other case, upon evidence, which at this state of this case, is on evidence that has not been submitted to this jury, and it cannot be assumed, will be submitted to this jury, and,

"For the further reason that it is calculated to lead this jury to believe, that as a matter of law, that they must believe the testimony of this witness, and must believe that the only reason for any divergence of difference in the testimony of the witness in this case, and what he may have given upon another trial, is based upon a different conception of the law applicable to the case.

"And the further reason, that it is misleading, would tend to confuse the jury, invade the province of the jury, and is highly prejudicial to the rights of the City."

Third. That the statement assumes, and is based upon facts which had not been proven in the case.

It is a sufficient answer to the first of these objections to say that the statement made to the jury by the judge cannot be considered as the submission of the case on a general charge, nor as giving the jury a general charge in a case submitted to them on special issues.

As before indicated, the case was submitted on special issues, which only related to the value of the strip of land sought to be condemned, and the injury, if any, to the remainder of the property which the taking of the strip for street purposes would cause it.

In submitting the issue of the value of the strip of land, the court instructed the jury as follows: "You are further instructed in connection with the foregoing Special Issue No. 1, that in arriving at the market value of said strip of land so described you shall take into consideration that it is a part of a certain tract of approximately 4.76 acres of land owned by the defendants, and of which larger tract the strip forms a part. And you are further instructed that in arriving at the market value of the strip of 33,348 square feet of land you should first ascertain the market value of the entire tract of 4.76 acres of the defendants' land, across which said strip is to be taken and condemned, without taking into consideration the value of the improvements upon said 4.76 acres, for any use for which said whole tract of 4.76 acres is reasonably adaptable, and then to fix the value of the land contained in the strip to be condemned herein at its proportionate part of the value of the whole 4.76 acres, adding thereto such sum, if any, as you may find the improvements now situated upon said 33,348 square feet of land may add to its market value."

Appellant makes no complaint of this charge.

The second objection made to the statement of the court is, we think, equally untenable. There is no assumption in the statement of what subsequent witnesses in the case would or might testify on the trial as to the value of the strip, nor does it inject into the case the testimony of any witness who testified on the former trial. The fact that there had been a former trial and the testimony of the witness Burrows on that trial was injected into the trial from which this appeal proceeds by counsel for appellant in asking the appellees' witness Burrows if he had not testified on a former trial of this case to a different value for the strip of land from that he now places upon it. The verdict of the jury on the former trial is not mentioned in the statement, and there is nothing in the statement from which this jury could have possibly inferred what was the verdict of the jury on that trial. The jury were told in the statement, in substance, that witnesses upon the former trial did not fix the value of the strip as part of the larger tract under the legal rule of ascertaining such value which they were required to follow in the present

trial by the decision of the Court of Civil Appeals on an appeal from the judgment rendered on the former trial.

We cannot agree with appellant, that because the statement of the judge gives the jury this information it violates our statute as uniformly construed by numerous decisions of our appellate courts which forbids the court in his charge, or by comment or statement made in the hearing of the jury, to give any expression of his opinion upon the weight of the evidence adduced upon the trial; nor that such statement "was calculated to lead the jury to believe that as a matter of law they must believe the testimony of these witnesses, and must believe that the only reason for any difference in the witness' testimony in this case (on the present trial) and what he may have given upon the former trial, is based upon a different conception of the laws applicable to the case."

This reasonable and probable explanation of the difference in the testimony of the witness on the second trial and that given by him on the first trial might more properly have been obtained from the witness himself, and doubtless would have been so obtained but for the objections made by appellant's counsel to his testifying in explanation of this difference in his testimony. The truth of the facts stated by the court is otherwise shown by the record and is not questioned by appellant.

The ascertainment of the truth being the primary purpose of judicial investigation, the jury were entitled to the benefit of any admissible fact which would aid them in determining the credibility and weight to be given the testimony of any witness in the case.

The circumstances in which the statement before set out was made are thus shown by the record:

The witness Burrows testified on direct examination that the value of the strip of land sought to be taken by the city was $3.28 per square foot. On cross-examination this witness was asked by appellant's attorney what was the value of the whole strip at his estimate of its value per square foot, and answered $109,381.44. He was then asked if he did not testify on a former hearing that the value of the property was $2 or $2.50 per square foot, to which the witness answered that he did. He was further asked if the market value of property in the city of Houston had not depreciated since the time of his former testimony to which he answered: "I think on an average it is probably lower."

On redirect examination by appellees' attorney, after repeating his statement on direct examination as to the average value per square foot of the tract as a whole, and that the value of the strip as a whole was $109,-381.44, the record shows the following occurrence:

"Q. Now, why the difference between the two and a half and three dollars and twenty-eight cents?

"Mr. Neathery: We object to this lawyer leading the witness.

"The Court: "You can ask whether or not he is placing a new valuation—

"General Wolters: I think, your Honor, you ought to state to the jury just what has happened; that we tried this case before and that—

"Mr. Neathery (interrupting): We object to that statement.

"General Wolters: Well, retire the jury then.

"(The jury was thereupon retired from the box.)"

The jury were kept in retirement for some time, during which the attorneys for each side presented arguments to the court. After hearing these arguments, the court made the statement to the attorneys which we have before set out, and it was taken down in shorthand by the court reporter, and upon return of the jury was by the direction of the court read to the jury by the reporter from his shorthand notes.

If this statement by the court in the circumstances above shown can be considered a violation of the rule forbidding the court to give the jury any intimation of his opinion upon the weight of the testimony in the case, such violation was only technical, was not reasonably calculated to prejudice the rights of appellant, and was therefore harmless error. It is clear from the record as a whole that the jury were not influenced by the statement of the court to accept as correct the testimony of the witness Burrows as to the value of the strip of land. The record shows that six witnesses for appellees testified as to the value of this strip. The average of the different values placed by these witnesses upon the land is $3.08 per square foot. Nine witnesses testified for appellant as to the value of the land. The average of the values fixed by these nine witnesses is 92 cents per square foot. The jury by their verdict valued the land at $1.87 per square foot, which is less than the average of the values fixed by all of the witnesses who testified in the case.

It seems to us that this record conclusively shows that the technical error of the court in stating to the jury the undisputed fact, abundantly shown by the record as a whole, that the legal rule for fixing the value of the strip across appellees' larger tract of land which the witnesses were required to apply on this trial was not the rule applied on the former hearing, did not influence the jury to appellant's harm or injury.

There is and can be no contention that the verdict is against the apparent weight or preponderance of the evidence. Ware v. Jones (Tex. Com. App.) 242 S. W. 1022; Shaw v. Harris (Tex. Civ. App.) 8 S.W.(2d) 194, 195; Rhea v. Cook (Tex. Civ. App.) 174 S. W. 892, 894; St. Louis S. Ry. Co. v. Groves, 44 Tex. Civ. App. 63, 97 S. W. 1084, 1085, 1086; Sterling v. De Laune, 47 Tex. Civ. App. 470, 105 S. W. 1169, 1172. On the contrary, the whole record justifies the conclusion that the verdict reached by the jury was the fair, impartial, and intelligent exercise of their best judgment from all the evidence as to the reasonable value of the strip of land. There is no rule more firmly imbedded in the jurisprudence of this state, nor more salutary in enabling our courts to administer legal justice without unnecessary harmful delay, than the rule of "harmless error" which prohibits any appellate court from revising the judgment of a trial court for an error of law in the process of the trial, unless the error amounted to such a denial or infringement of the appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an unjust judgment.

We think this well-settled rule answers each and all of the five propositions in appellant's brief which predicates error upon the statement of the court to the jury before set out, and that none of these propositions can therefore be sustained.

The sixth proposition presented in appellant's brief assails the ruling of the court in admitting in evidence, over appellant's objection, the testimony of a witness for appellees that on April 15, 1929, he sold a block of land three or four blocks south of appellees' property fronting 250 feet on Main street, 250 feet on Stuart avenue, 250 feet on Travis street, and 250 feet on Elgin avenue, for the sum of $295,000. The objections to this testimony were, that the tracts of land were not similar, and were not situated near enough to each other to render their respective values comparable, and, further, that the date of the sale was too remote from the date of the trial, November, 1932, to be admissible as evidence of the then market value of the land sought to be condemned.

We do not think any of the objections to the testimony presented by this proposition should be sustained.

The property, the sale of which for $295,000 was shown by the testimony of Mr. Palmer Hutcheson, is situated three or four blocks distant from appellees' property. It is a smaller tract of land, and is dissimilar from appellees' tract in being in the form of a square, and having a city street on each of its four sides. But each of these properties have a frontage on Main street, which is a principal business street of that section of the city of Houston.

The average price per square foot for which the Hutcheson block was sold in 1929 was $4.72. All of the real estate men who testified in the case whether called as witnesses by appellees or appellant followed the same method in arriving at the market value of appellees' tract as a whole. This method was to consider the land as if it was subdivided into lots with frontages on Main, Milam, and Travis streets, and then estimate the market value of lots of average size of other lots in the city of Houston. In so valuing the lots, the witnesses all fixed a higher value on corner lots, and on lots fronting on Main street. The value of the whole tract was then fixed at the aggregate value of all its component parts. While this method of valuation may be somewhat complex, and possibly ultra scientific, the witnesses testified that it is in accord with the "Sommers System," the method adopted by the city of Houston's tax department in fixing the value of blocks and lots within the city, and by real estate men in the city in estimating the market value of unimproved land in the city. There was no other tract or block of unimproved land within the city nearer appellees' tract than the Hutcheson block. Each of these parcels of land have frontage on Main street and are in the section of similar business development and extension.

Such being the facts, we cannot hold that the two tracts of land were so dissimilar in size and surroundings, or so distant from each other, as to render the price at which the Hutcheson block was sold inadmissible on the issue of the value of the appellees' tract of land.

In respect to the remoteness in time of the sale of the Hutcheson block (April, 1929) and the trial of this case in which the testimony objected to was introduced (November,

1932), it should be borne in mind that the testimony to which the objection was made was introduced in rebuttal of the testimony of appellant's witness who fixed the value of the frontage of appellees' tract on Main street by the method before indicated, and that all of the witnesses testified that there had been from 25 to 50 per cent. decrease in the market value of property on Main street in this section of the city since the sale of the Hutcheson property, and that all the witnesses on the trial in fixing the value of this Main street frontage on appellees' property took into account this general decrease in values. This fact was considered or assumed by both parties throughout the trial, and the verdict of the jury which fixed the value of appellees' tract at $1.87 per square foot shows that the jury took into consideration this general decrease in the market value of Main street property in this section of the city.

■ The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases. Lewis on Eminent Domain, vol. 2 (2nd Ed.) § 443. In support of his text the author just mentioned cites cases in which the difference in time was from three or four to eight years, and the distance of the lands from each other was from half a mile to six miles. This general rule, that these questions are largely left to the discretion of the court, is also announced in 22 C. J. § 855. See, also, 17 Texas Jurisprudence, § 160.

We do not think the record in this case shows any abuse of this discretion on the part of the trial judge. On the contrary, he appears to have exercised patience and diligence to so conduct the proceeding as to assist the jury to ascertain the truth of the facts, and enable them by their verdict to reflect the legal justice of the controversy.

Appellant's seventh proposition presents the same questions as to the admissibility of testimony of the price obtained on the sale in May, 1928, of a lot fronting 50 feet on Main street opposite appellees' property and extending back for a distance of 110 feet, that are presented in the proposition just discussed by us. What we have said in regard to the Hutcheson sale requires the holding that this seventh proposition cannot be sustained.

■ The eighth proposition, which complains of the ruling of the court in permitting the witness Burrows to illustrate the working of the Sommers system, before mentioned, which was used by all of the witnesses in the case to determine the value of appellees' tract of land as a whole, by applying such method to the purchase price of the Hutcheson block at its sale in 1929, and demonstrating by such method of valuation that the block was sold for its then market value. We fail to see how appellant could have been injured by this demonstration of the reasonable accuracy of the method used by its witnesses as well as the witnesses for appellees in ascertaining the value of appellees' tract of land.

■ There is no merit in appellant's ninth proposition, which complains of the ruling of the trial court in permitting appellees to show that an A. B. C. store or food market, engaged in business similar to that of appellees, and established on property on Main street adjoining appellees' tract of land about the time appellees opened their store, had no parking space in front of its store building, and had closed its store at that location several years before the trial of this case. The objection to this testimony was that it was an attempt to mislead the jury to believe that the reason for the closing of the A. B. C. store was the lack of parking space for its customers in front of the store, and prejudice the jury in favor of appellees' claim for damages to their property by the taking by the city for street purposes of their front parking space.

It is a sufficient answer to this proposition to say that both the president and the general manager of the A. B. C. store company testified, in substance, that the store in question was abandoned by their company because it had no parking space in front of the store building, and such parking space was necessary for a successful operation of stores of this kind.

No assault is made on the amount of the verdict fixing the amount of damage to appellees' remaining property for the purpose for which it is being used by them, which will be caused by the taking by appellant for street purposes of the strip sought to be condemned.

In our opinion, the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.