**STATE v. RICHARDSON et ux.**

No. 2673.

Court of Civil Appeals of Texas. Eastland.

Oct. 22, 1948.

Rehearing Denied Dec. 3, 1948.

W. O. Gross, Russel Moran and Herman Fitts, all of Mineral Wells, for appellant.

Bouldin & Bouldin, of Mineral Wells, for appellees.

COURTNEY GRAY, Justice.

This is an appeal from an award made by the duly appointed Commissioners in a condemnation proceeding involving about six acres of land in Palo Pinto County, Texas, incident to the relocation and improvement of State Highway No. 180, from a new bridge across the Brazos River east one mile, more or less. It was agreed that the condemnation proceedings were regular, that the land taken was subject to condemnation for such purpose, and the only issue involved in the trial,

360

which was to a jury, was as to the amount of compensation to which the owners were entitled. The award made by the Commissioners was $360 for the land taken and·$70 as damages to the remainder, making a total of $430, from which the Richardsons appealed to the County Court, where they recovered judgment for $1,200 for the land taken and $1,000 for damages to the remainder, a total of $2,200, from which the State appealed to this court.

The case was submitted to the jury on two special issues:

1. From a preponderance of the evidence, what do you find was the actual cash value on or about the 11th day of July, 1947, of the 6 acre tract of land of defendants Theo Richardson and Mayzelle Richardson, taken by the State of Texas for its purpose to be used as a State Highway?

The jury answered $1,200.00.

2. Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants Theo Richardson and Mayzelle Richardson in common with the community in general and not peculiar to them and connected with their ownership, use and enjoyment of the remaining 41 acre tract, and taking into consideration the uses to which the 6 acre tract taken by the State of Texas is to be subjected, what do you find from a preponderance of the evidence was the damage (if you find any damage was done to said 41 acre tract) to the remaining 41 acre tract not taken, immediately after the taking of said 6 acre tract?

The jury answered $1,000.00.

Plaintiff interposed numerous objections and exceptions to the charge as given by the court. To the charge as a whole, it was objected, (a) that said charge erroneously failed to submit to the jury whether the land in question had a market value on or about July 11, 1947, but (b) said charge assumes, and in effect instructs, the jury that said property did not have a market value on said date; (c) that said charge erroneously failed to submit to the jury any special issue as to the market value of the property taken on or about July 11, 1947; (d) that no issue was submitted as to the market value of the

remainder of the property not taken on or about July 11, 1947; (e) that said charge erroneously failed to give the jury a definition of cash market value.

To the submission of Special Issue No. 1, it was objected, (a) that there was no legal or competent evidence in the record showing or tending to show that the property in question did not have a cash market value on the above mentioned date; (b) that said special issue assumed as· a fact that said property had no cash market value on said date; and (c) that there was no legal or competent evidence in the record supporting said issue, in that testimony as to actual value was inadmissible and improperly admitted over objection, there being no predicate laid for the introduction of such testimony.

Plaintiff objected and excepted to Special Issue No. 2 in the court's charge relating to damage to the remainder of the property not taken for highway purposes, (a) in that said issue did not submit a proper or legal method of determining damage to the remainder of said property; (b) that said issue failed to inquire of the jury as to the value of the remaining property either before or after taking of the six acres for highway purposes; (c) that said issue was erroneous in that it left the jury the right to speculate as to what constitutes damages to the remaining tract and in effect permitted the jury to consider elements not proper on the issue of such damages and tends to encourage the recovery of double damages; (d) that it was further erroneous in that it would permit the jury to include as an element of damages speculative and consequential damages such as the cost to the defendants of keeping their fences in repair in the future; (e) and that said Special Issue No. 2 was upon the weight of the evidence in that it instructs the jury in effect that the remaining land had suffered damage by reason of the taking of said six acres for highway purposes.

All of said exceptions having been duly presented, were by the court overruled, to which ruling, plaintiff excepted.

In due time, appellant tendered and requested submission of its Requested Special Issue No. 1, which was as follows:

"Do you find from a preponderance of the evidence that the Theo Richardson land in question had a cash market value on or about July 11, 1947?

"Answer 'Yes' or 'No.'"

Special Issue No. 2.

"If you have answered the foregoing Special Issue No. 1 'Yes,' then answer the following issue; otherwise, do not answer it.

"From a preponderance of the evidence, what do you find was the cash market value on or about July 11, 1947, of the six acre tract taken by the State of Texas for highway purposes, considered as severed land?

"Answer in dollars and cents.

"In connection with the foregoing Special Issues, you are instructed that by the term 'cash market value' is meant the price the property will bring in cash when offered for sale by one who desires to sell but is not obligated to sell and is bought by one who desires to buy but is under no necessity of buying."

Said requested special issues were by the court refused, to which plaintiff excepted and in open court stated that a motion for new trial would be filed, and if same be overruled, appeal would be taken to this court. Whereupon, the court rendered judgment for defendants in the sum of $2,200.00, with interest from date of judgment at six per cent per annum, and costs of court.

The exceptions to the court's charge as well as numerous exceptions to the rulings of the court on evidence were set out in the motion for new trial and brought forward in the appeal. They have all been considered, but in view of the disposition to be made of said appeal, we shall confine this opinion to those points which we consider determinative of same.

■■■ In the first place, we think the trial court erred in not submitting to the jury an issue as to whether said tract of land had a market value, and if so, an inquiry as to what was its market value. The evidence showed that said tract of land was situated just east of the Brazos River and about three miles west of Min-

eral Wells; that it was a favorable location and that there was a demand for small and medium sized tracts in said locality. Several witnesses who were engaged in the real estate business locally testified that it did have a market value and they knew its market value. But on being tested as to their qualifications to testify, it was elicited that they knew of no sale of tracts of land in said locality of comparable size in an orchard of Bruce plum trees six or seven years old, and it was admitted that there was no other Bruce plum orchard of similar size in said locality. Recent sales of similarly improved tracts would have been admissible and of value to the jury in arriving at the market value of this tract. But it does not necessarily follow that in the absence of such sale or sales, the tract involved had no market value. By sale or sales of entirely similar tracts is not an exclusive method of proving market value. Many pieces of property differ from others in various particulars. A given tract of land may be so situated and so improved as to be unique and different and yet, command a ready sale if placed upon the market. The witnesses called said the tract in question had a market value and they knew such market value. Such witnesses thereby prima facie qualified to testify as to such value. City of Trinity v. McPhail, Tex.Civ.App., 131 S.W.2d 803. The weight to be given their testimony was for the jury. Evidence as to intrinsic value does not become controlling unless the evidence conclusively shows the absence of market value.

In the case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, the Commission of Appeals suggests a procedure in condemnation suits of this character. While it is not claimed to be an absolutely exclusive method, it is supported by the great weight of authority as well as by sound reason, and has been consistently followed and applied by our appellate courts. An apparent exception is found in a recent decision of this court in Bexar County v. Falbo, Tex.Civ.App., 210 S.W.2d 658 where the peculiar facts justified a deviation, but the trial court was very careful in its charge. We see nothing in this

case that would justify a departure from the rule promulgated in said State v. Carpenter, supra [126 Tex. 604, 89 S.W.2d 201], from which we quote the suggested issues:

"Question No. 1. From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the state for highway purposes at the time it was condemned, considered as severed land?

"Answer in dollars and cents.

"Question No. 2. From a preponderance of the evidence what do you find was the market value of defendants' tract of land, exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes?

"Answer in dollars and cents.

"Question No. 3. Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land a/ross which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' tract of land immediately after the taking of the strip condemned for highway purposes?

"Answer in dollars and cents.

"You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it."

From what has been said above, and the suggested special issues in said Carpenter case, reversible error appears. The trial court should have admitted the proffered testimony as to market value and submitted an issue as to what was the market value, with proper definition of same, together with issues as to values before and after the taking. The vice in Special Issue No. 2 as given, was that no measure of damages was given, and the jury was left without a yard stick by which to measure and ascertain the damages. Upon the matter of values of the remainder of the tract before and after taking, considerable latitude is allowed in the introduction of testimony ·to assist the jury in determining the amount of depreciation, if any. But "evidence relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property," should be rejected. After all, the jury is limited to a determination of the market value of the land not taken immediately before and immediately after the condemnation.

Other asserted errors need not occur upon another trial, and discussion of same is pretermitted here.

Reversed and remanded.