CITY OF AUSTIN V. JOHN CANNIZZO ET AL

No. A-4360. Decided March 31, 1954.
Rehearing overruled June 2, 1954.
(267 S.W. 2d Series 808)

W. T. Williams, Jr., City Attorney, Clifton E. Speir, Doren R. Eskew and Robert L. Burns, Assistants to City Attorney, for petitioner.

In regard to the submission of evidence on market and intrinsic value of the land, cited City of Dallas v. Andrews, 149 Texas 609, 236 S.W. 2d 609; Lombardo v. City of Dallas, 124 Texas 1, 73 S.W. 2d 475; State v. Carpenter, 126 Texas 604, 89 S.W. 2d 194.

David L. Tisinger, of Austin, for respondents.

Cited J. B. Watkins Land Mort. Co. v. Campbell, 98 Texas 372, 84 S.W. 424; International & G. N. R.R. Co. v. Pape, 73 Texas 501, 11 S.W. 526; State v. Schlick, 142 Texas 410; 179 S.W. 2d 246.

MR. JUSTICE CALVERT delivered the opinion of the Court.

The controversy in this condemnation proceeding brought by our petitioner, the City of Austin, for school purposes, relates only to the determination of the damages. The land actually appropriated was a more or less rectangular piece, being 4.57 acres out of a larger tract owned by the respondent-condemnees, John Cannizzo and others, in a southwesterly area of the city, in the angle between the Barton Springs Road on the north and the Fredericksburg Road or South Lamar Boulevard on the east. The 4.57 acres lies immediately south of a 6-acre tract of the City on which is located a relatively new public school of substantial size. The Special Commissioners awarded the respondent $13,000, which the County Court of Travis County, upon a verdict, raised to a total of $25,000, being $21,000 for the value of the 4.57 acres taken and $4,000 by way of devaluation of the rest of respondent's tract. The charge to the jury included a part of the preliminary general instructions the statement "that the only issue in the case is the value of the land taken, and the depreciation in value, if any, to the defendants' remaining land." The special issues, accompanying instructions and answers are set out in footnote 1.

(1)—"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence that the 4.57-acre tract did not have a market value on or about July 14, 1952?

"In this connection, you are instructed that there is no market·or market value in the sense here used, unless there has been a sufficient number of recent sales of comparable property to establish a prevailing price. Answer Yes or No.

"Answer. Yes.

"If you have answered the above and foregoing Special Issue No. 1 'Yes,' then answer the following Special Issues Nos. 2, 3 and 4; otherwise do not answer Special Issues Nos. 2, 3 and 4.

"By the term 'intrinsic value' as used in the following Special Issues Nos. 2, 3 and 4, is meant the price in cash the land should sell for if offered for sale by one not obliged to sell, and purchased by one not under necessity of doing so, taking into consideration all of the uses to which it was adaptable.

"SPECIAL ISSUE NO. 2:

"What do you find from a preponderance of the evidence was the intrinsic value on or about July 14, 1952, of the 4.57-acre tract considered as severed land?

"Answer in dollars and cents.

"Answer: $21,000.00.

"SPECIAL ISSUE NO. 3:

"What do you find from a preponderance of the evidence was the intrinsic value on or about July 14, 1952, of defendants' tract of land, exclusive of the 4.57-acre tract, before such 4.57-acre tract was taken?

"In answering this Special Issue, you are instructed that by the term 'defendants' tract of land exclusive of the 4.57-acre tract,' is meant the tract outlined in red on Exhibit 'A' attached hereto, and made a part hereof.

"Answer in dollars and cents.

"Answer: $30,000.00.

"SPECIAL ISSUE NO. 4:

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use, and

The Court of Civil Appeals affirmed the County Court judgment. There was no assignment directly attacking the verdict as excessive. 260 S.W. 2d 54.

We granted the writ of error on two points alleging respectively error committed below: (a) "in holding that for the 4.57-acre tract of land to have a market value there must have been a sufficient number of recent sales of comparable property in the immediate vicinity of said tract to establish a prevailing price (such as can be quoted on wheat, cotton, and other commodities)"; and (b) in admitting, and permitting the jury to consider, evidence of the adaptability of the 4.57-acre parcel for commercial purposes, despite the undisputed fact that commercial usage would violate valid existing city zoning restrictions on the area.

---

enjoyment of the particular tract of land outlined in red on Exhibit 'A' and taking into consideration the uses to which the 4.57-acre tract is to be subjected, what do you find from a preponderance of the evidence was the intrinsic value of such tract outlined in red on Exhibit 'A' immediately *after* the taking of the 4.57-acre tract on July 14, 1952?

"Answer in dollars and cents.

"Answer: $26,000.00.

"If you have answered the above and foregoing Special Issue No. One 'No,' then answer the following Special Issues Nos. 5, 6 and 7; otherwise do not answer Special Issues Nos. 5, 6 and 7.

"By the term 'market value,' as used in the following Special Issues, is meant the price in cash the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.

"SPECIAL ISSUE NO. 5:

"What do you find from a preponderance of the evidence was the market value of the 4.57-acre tract considered as severed land at the time of the taking on July 14, 1952?

"Answer in dollars and cents.

"Answer: $ _____ __ ___ __ _____.

"SPECIAL ISSUE NO. 6:

"What do you find from a preponderance of the evidence was the market value of the defendants' tract of land, exclusive of the 4.57-acre tract, immediately *before* the 4.57-acre tract was taken on July 14, 1952?

"In answering the above and foregoing Special Issue No. 6, you are instructed that by the term 'defendants' tract of land, exclusive of the 4.57-acre tract, is meant that tract of land outlined in red on Exhibit 'A' attached hereto, and made a part hereof.

"Answer in dollars and cents.

"Answer: $__ _____ _____ ___ _____ .

"SPECIAL ISSUE NO. 7:

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them in connection with their ownership, use, and enjoyment of the particular tract of land outlined in red on' Exhibit 'A' attached hereto and made a part hereof, and taking into consideration the uses to which the 4.57-acre tract is to be subjected, what do you find from a preponderance of the evidence was the market value of such tract so outlined in red on Exhibit 'A' immediately *after* the taking of the 4.57-acre tract on or about July 14, 1952?

"Answer in dollars and cents.

"Answer: $_____."

Proposition (a) above involves consideration of Special Issues Nos. 1 and 2 with their corresponding instructions. The theory of the charge and the view of both courts below was that unless there had been a sufficient number of recent sales of comparable property to establish a prevailing price, respondents' recovery should be measured by the "intrinsic" rather than the "market" value of the property. This view finds particular support in Taylor County v. Olds, Tex. Civ. App., 67 S.W. 2d 1102, writ dismissed, by the Eastland Court of Civil Appeals, and in a series of cases thereafter decided by the same court. What was said in the Olds case in this respect is also quoted with approval by the Galveston Court of Civil Appeals in Foley Bros. Dry Goods Co. v. Settegast, 133 S.W. 2d 228, writ refused.

■ On the other hand, although disclaiming any intention to lay down a hard and fast rule to be followed in all fact situations, this Court made clear in State v. Carpenter, 126 Texas 604, 89 S.W. 2d 194, motion for rehearing overruled, 89 S.W. 2d 979, not only what it regarded as the controlling issues in the ordinary eminent domain case but the form in which the issues should be submitted so as to avoid confusing the jury as much as possible. Under the form there suggested and the record in this case as we understand it, there were only three issues in this case: (1) The market value of the land taken, considered as severed land, (2) the market value of the remainder of the tract immediately before the taking, and (3) the market value of the remainder of the tract immediately after the taking, "market value" in all such issues being defined in terms of what the land would bring in a transaction between a willing seller and a willing buyer. (89 S.W. 2d 201-202).

■ Market value is not restricted to prevailing price. It may be that in rare instances a prevailing price is fixed on a front-foot basis in new additions and subdivisions in the growth and development of our cities, and that in such instances the prevailing price would in turn fix the market value of the property, but market value would still measure recovery in eminent domain proceedings and prevailing price would be but evidence of market value. It was clearly error to instruct the jury that the 4.57-acre tract had no market value unless the evidence revealed "a sufficient number of recent sales of comparable property to establish a prevailing price."

■ By Special Issue No. 2 the court asked the jury to find the *intrinsic* value of the land taken. This was also error. We repeat: the measure of respondents' recovery was the *market value* of

his land. Although there is authority for the proposition that where property has no market value its intrinsic value may be shown, we have no such case before us.

We see no need to ferret out of the decided cases the nice distinctions made by our courts between "market value" and "intrinsic value" as those terms are used in eminent domain and kindred proceedings. Most of the cases to which we are referred and which we have investigated use the term "intrinsic value" in the sense of intrinsic worth based upon such factors as cost, depreciation, present usefulness, past return on investment, etc., and hold that where the evidence establishes the absence of a market for the kind of property involved evidence of intrinsic value is admissible for the purpose of arriving at the final figure to be established whether that figure be for the purpose of awarding damages in an eminent domain proceeding, fixing a basis for tax liability, or establishing the rights of individual suitors. As examples, see Lower Colorado River Authority v. Hughes, Tex. Civ. App., 122 S.W. 2d 222, writ dismissed; West Texas Hotel Co. v. City of El Paso, Tex. Civ. App., 83 S.W. 2d 772, writ dismissed; Foley Bros. Dry Goods Co. v. Settegast, Tex. Civ. App., 133 S.W. 2d 228, writ refused.

Respondents did not plead that the land in suit had no market value. On the contrary, one of their objections to the award of the Special Commissioners was because it failed "to award the full market value of the land proposed to be taken," and by their prayer they sought recovery of "their true damages, to wit: the market value of the land proposed to be taken, or in the alternative, the intrinsic value thereof, or in the alternative, the value to these defendants and condemnees." They offered three witnesses on value, each of whom testified to the market value of the property. One of the witnesses also testified that the property had no market value in the sense that there was not a quotable prevailing price and that the intrinsic value of the property was the same as the value he had theretofore placed on the property as its market value. Petitioner offered two witnesses on the issue of damages both of whom qualified to testify to market value of the property and both of whom did so testify.

Thus it appears as a matter of law that there was no such record before the court as justified the abandonment in the charge to the jury of the standard of market value and the adoption therein of the standard of intrinsic value in measuring damages. City of Trinity v. McPhail, Tex. Civ. App., 131 S.W. 2d 803,

no writ history; State v. Richardson, Tex. Civ. App., 215 S.W. 2d 359, writ refused, N.R.E. The fact that petitioner's counsel sought unsuccessfully and without sound basis to disqualify some of respondents' witnesses by objecting to their testimony on the ground that the witnesses had not shown themselves acquainted with a sufficient number of recent sales of comparable property in the immediate vicinity as to form the basis of opinion testimony of market value could not justify the abandonment.

■ But respondents contend that even if Special Issue No. 2 was erroneous in using intrinsic value as the standard of recovery, the error was rendered harmless by the instruction given in connection therewith which measured intrinsic value by the same yardstick as is used in measuring market value. Under the provisions of Rules 434 and 503, Texas Rules of Civil Procedure, we must determine the harmlessness of the error by an examination of the entire record and we should not order a reversal unless we are satisfied that the error "was reasonably calculated to cause and probably did cause an improper judgment in the case." Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S.W. 2d 191; Texas Employers Ins. Assn. v. McKay, 146 Texas 569, 210 S.W. 2d 147. It therefore remains for us to decide whether, in our judgment, the instruction rendered the errors in the charge harmless.

■ Whereas "market value" is correctly defined as the price which property *would* bring in a transaction between a willing seller and a willing buyer, it will be noted that the instruction given in connection with Special Issue No. 2 defined "intrinsic value" as the price which the property *should* bring in such a transaction. That the court intended the instruction to call for a measure of damages different from that of market value as laid down in the Carpenter case is heightened and made doubly clear by the court's instruction just preceding Special Issue No. 5, the only place in the charge where "market value" is defined and in which it is defined as the price which the property *will* bring rather than the price which the property *would* bring. If the court had intended the jury to understand that "market value" and "intrinsic value" were one and the same thing there was no occasion whatever for the use of the word *will* in the definition of the former and the word *should* in the definition of the latter. Whatever distinctions may be made between the words *will* and *should* by lexicographers and between the phrases "the price which the property *will* bring" and "the price which the property *should* bring" by grammarians, the ordinary signification of the latter word and phrase would, by contrast at least, be calculated

to lead the jury to award a greater sum, including purely speculative elements of damages.

Moreover, the errors pointed out—the submission of Special Issue No. 1 for a fact finding when there was no basis in this record for any such fact issue, the erroneous instruction given in connection with Special Issue No. 1, the erroneous submission of Special Issue No. 2 when there was no basis in this record for any such issue, and the wording of the definition of "intrinsic value" which connoted something wholly different from "market value"—all permeated the remainder of the charge so as to apply wholly erroneous standards in the jury's determination of the diminution of value of the part of respondents' land not taken.

An examination of the charge will reflect that the jury was never given an opportunity to find whether the remainder of the tract had a market value before and after the taking of the 4.57 acres, even if the existence or non-existence of a market value for the remainder had been a disputed issue of fact. The jury was instructed to find the intrinsic value of the remainder if they had answered that there was no prevailing price for the part taken but if they found that there was a prevailing price for the part taken then they could find the "before and after" market value of the remainder which was to be measured by a standard wholly different from the standard used in measuring the market value of the part taken.

Since there was no testimony showing the existence of a prevailing price for the 4.57 acres, it must be obvious that the instruction given in connection with Special Issue No. 1 amounted to an instructed verdict that neither the tract taken nor the remainder had a market value as that term is defined in the Carpenter case. Such an instruction was contrary to all the evidence.

■ As to the point on allowing consideration of value of the 4.57 acres for commercial purposes in the face of contrary zoning restrictions, we do not regard this as error. We do not, indeed, consider the decisions of the Court of Civil Appeals or of this Court in Andrews v. City of Dallas, 232 S.W. 2d 753, 159 Texas 609, 236 S.W. 2d 609, to uphold conclusively respondents' position on this point; nor, on the other hand, do we consider the question foreclosed in petitioner's favor by Long Beach City High School Dist. v. Stewart, 30 Cal. 2d 763, 185 Pac. 2d 585, 173 A.L.R. 249.

In the willing seller-willing buyer test of market value it is frequently said that all factors should be considered which would

reasonably be given weight in negotiations between a seller and a buyer. 29 C.J.S., Eminent Domain, § 159, page 1023. This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time. Orgel in his text on Valuation Under Eminent Domain, Vol. 1, § 30, p. 141, footnote 113, says: "The test is well phrased in United States v. 3969.59 Acres of Land, 56 Fed. Supp. 831: 'To warrant admission of testimony as to the value of land for purposes other than that to which it is being put at the time of the taking, it must first be shown: 1. That the property is adaptable to the other use. 2. That the other use is reasonably probable within the immediate future, or a reasonable time. 3. That the market value of the land has been enhanced thereby.'"

Moving closer to the particular problem presented in this case, it is said in Nichols on Eminent Domain, 2nd Edition, Vol. 1, p. 669, sec. 319: "When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration." Indeed, this very rule was recognized in the Stewart case, supra, by the Supreme Court of California which, sitting en banc and by a divided vote of four to three, held that value testimony of an expert witness based on the adaptability of the land to industrial uses was properly excluded in the light of the fact that the property was zoned for single family residences. The majority opinion in the case loses much of its force in stressing the fact that the witness did in fact give value testimony based on the adaptability of the property for industrial purposes and the further fact that the charge of the trial court was broad enough to authorize the jury to "consider all of the uses to which the property is suitable and available, having regard not only to the existing business or wants of the community, but also those that may reasonably be expected in the immediate future." The instruction was in keeping with the rule laid down by the Supreme Court of the United States in Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L. Ed. 206, where, in speaking of consideration to be given prospective uses of property, the court said: "Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or

wants of the community, or such as may be reasonably expected in the immediate future."

■ We are unwilling to lay down a hard and fast rule that in arriving at market value consideration may never be given to a use for which property is reasonably suitable and adaptable but which use is presently prohibited by a zoning ordinance. It is a matter of common knowledge that cities frequently lift zoning ordinances or reclassify property in particular zones when the business or wants of the community justifies that type of action in the interest of the general public welfare. At the same time, we cannot announce a rule, except in general terms, that should be applied in all cases where zoning ordinances or other legal restrictions existing at the time of the taking prohibit the use of the property for purposes other than those to which it is devoted. If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available. Whenever such testimony is admitted it would not do violence to the definition of "market value" suggested in the Carpenter case by adding thereto so as to have it read: You are instructed that the term "market value" is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.* This definition will permit the jury to give such weight to the probability of the lifting of restrictions as it thinks a prospective purchaser would give.

Without detailing all the facts in this case which prompt our conclusion, we think the trial court was correct in admitting evidence of the suitability and adaptability of a small part of the property involved for a shopping center. The testimony offered by respondents on this phase of the case was limited to the present value of the prospective use of the property as a shopping center, it being admitted that there was then in existence a zoning ordinance which prohibited its use for that purpose. The jury could weigh the effect of the restriction against the prospective

use. They could weigh also the fact that in the entire large area in question, which is fairly remote from the center of Austin, there is nothing resembling a shopping center and, considering the undoubted trend toward such developments, could consider the reasonable probability, if any, that these facts might bring about a rezoning of the property within the reasonable future to make it available for use as a shopping center.

Points of error raising questions not controlling here but that may arise on a retrial are disposed of as follows:

■  As bearing on the existence of a market for the property involved, and of its market value, evidence of recent sales of comparable property should not be restricted to the narrow area west of Kinney Avenue and south of Barton Springs Road. Evidence of recent sales of other property in the City of Austin, meeting the test of similarity, should be admitted. Gulf & Interstate Ry. Co. of Texas v. Stephenson, Tex. Civ. App., 212 S.W. 215, no writ history; City of Houston v. Pillot, Tex. Civ. App., 73 S.W. 2d 585, reversed on other grounds, (Texas Com. App.), 105 S.W. 2d 870; Joyce v. Dallas County, Tex. Civ. App., 141 S.W. 2d 745, no writ history; Texas Law of Evidence by McCormick and Ray, p. 908, sec. 699; 118 A.L.R. 869; 174 A.L.R. 386.

The property is unimproved. Prices paid for improved lots and the value assigned to improved lots in recent sales is not admissible because not meeting the test of similarity. Chaney v. Coleman, 77 Texas 100, 13 S.W. 850; 118 A.L.R. 869; 174 A.L.R. 386.

■  Opinion testimony as to the front-foot value of non-existent lots in a hypothetical subdivision is too speculative to be admitted as direct evidence of market value. A witness may give his opinion of the present market value of the land, taking into consideration its adaptability to subdivision for residential and commercial purposes and the cost of converting it to such uses, but inquiry into the details or mental processes by which the witness arrived at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment. Silliman v. Gano, 90 Texas 637, 39 S.W. 559; Denison & P.S. Ry. Co. v. Scholz, Tex. Civ. App., 44 S.W. 560, no writ history; Dickey's Estate v. Houston Ind. Sch. Dist., Tex. Civ. App., 300 S.W. 250, writ dismissed.

There was no error in admitting the plats for the purpose for which they were offered.

The part remaining after the taking of the 4.57 acres is small and its area should be accurately ascertained before another trial so that this matter will not be left to estimate and speculation.

The judgments of both courts below are reversed and the cause is remanded to the trial court.

Opinion delivered March 31, 1954.

ASSOCIATE JUSTICES GRIFFIN AND WILSON concur in the judgment reversing and remanding the cause because of errors in the charge but do not agree with that portion of the opinion holding that a prospective use of the property prohibited by a zoning ordinance may be considered in determining value.

CHIEF JUSTICE HICKMAN AND ASSOCIATE JUSTICES SMEDLEY AND GARWOOD dissent from the judgment reversing and remanding the cause because of errors in the charge, but CHIEF JUSTICE HICKMAN AND ASSOCIATE JUSTICE GARWOOD concur in the remainder of the opinion.

JUSTICE GARWOOD, joined by JUSTICE SMEDLEY and CHIEF JUSTICE HICKMAN, dissenting.

Our decision here recalls—somewhat sadly—the good words with which we began the dedication of the new State Bar Building: "* * * for the letter killeth but the spirit giveth life." We require the unhappy condemnee to repeat a long and expensive jury trial because of purely formal errors in the charge for which our own previous statements of the law and the trial tactics of the condemnor City in the instant case are to no small extent responsible, and though making a rather studied bow to the doctrine of harmless error, actually reverse because of the difference between "should" and "would."

We of this court, who among ourselves have come to regard State v. Carpenter as a sort of bible, may perhaps properly be shocked that the courts below (a) spoke of "market value" in terms of current market price (like the price of cotton on a cotton exchange) as distinguished from the hypothetical willing buyer—willing seller price value, which State v. Carpenter calls "market value"; (b) labelled the hypothetical willing buyer-willing seller price value as "intrinsic"; and (c) submitted this "intrinsic value" question only contingently upon a finding that no "market value" in terms of current market price actually ex-

isted, instead of submitting it (according to the Carpenter case) as the only issue and without reference to the matter of current market price. But looking at the situation through the eyes of the lawyer, who may not be a specialist in condemnation cases and thus may regard State v. Carpenter as a decision like any other, one should perhaps be surprised only if the procedure followed in this case had not been followed. As the court properly concedes, Taylor County v. Olds stands for the proposition that evidence as to a value other than value in the sense of current market price is not even admissible, unless it is first established that the current price kind of value does not exist. State v. Carpenter came after Taylor County v. Olds but did not refer to it. State v. Carpenter was succeeded by the decision of the Galveston Court of Civil Appeals in Foley Bros. Dry Goods Co. v. Settegast, which—with the point properly before it— quoted Taylor County v. Olds at some length and with approval. When we "refused" the application for writ of error in the Foley Bros. case, we in effect made the language and quoted language in the opinion our own. That language used the term "market value" as meaning actual current market price, just as the lower courts did here, used "intrinsic value" as meaning value other than actual current market price, just as the lower courts did here, and indicated that "market value" in the sense of actual current market price must be eliminated before the other kind of value may be used, just as the courts below sought to do here. And, as we properly acknowledge, counsel for the condemnor city during the trial of the instant case appeared to maintain the view of Taylor County v. Olds and Foley Bros. Dry Goods Co. v. Settegast by objecting to the testimony of valuation experts of the condemnee on the ground that they were not familiar with current market prices of land in the area in question. One might add that our somewhat categorical statement that "market value is not restricted to prevailing price," is less a self evident proposition than a concept originating with State v. Carpenter. Surely in ordinary parlance "market value" has something to do with a market, and "market" suggests a substantial number of actual sales; whereas the willing buyer—willing seller price value of State v. Carpenter is by its own language a hypothetical one— an imaginary price to be paid by an imaginary buyer to an imaginary seller in an imaginary sale. Now the point of all this is not that State v. Carpenter is wrong. Whether the label, "market value," which it affixes to the hypothetical willing buyer-willing seller price value is scientifically accurate, or less accurate than the label "intrinsic value" used in the instant case for the same idea, is of little consequence so long as we know what we mean by the label we actually use. Doubtless, too, it is

simpler and more practical to have only the one issue of willing buyer-willing seller price value, rather than an issue on actual prevailing price and, conditioned on the answer thereto, the further issue on willing buyer-willing seller price value. It is well, indeed, to *state* this much in our opinion for future guidance of the bar and judges generally. But in *deciding the instant case,* the above-described conflicting state of the law certainly invites us to view with indulgence the course followed below and even more than in the ordinary case to be willing to subordinate mere form and terminology to substance and meaning. In my opinion we should hold the errors in the charge to be on their face innocent of prejudicial consequences and thus no ground for reversal. See Texas Employers Ins. Assn. v. McKay, 146 Texas 569, 571, 210 S.W. 2d 147, 148.

Under the Carpenter case, the matter for the jury to determine is, as stated, the price to prevail between consenting but uncompelled buyer and seller. In the instant case the conclusion seems inescapable that Special Issue No. 2, with its important accompanying instruction, plainly presented this very question. The label, "intrinsic value," used in the interrogation sentence, being clearly defined in the instruction in the terms of the Carpenter case formula, surely we are not to assume that the jurors would ignore the vital definition and look only to the term defined in concluding what was meant. If the trial court had used merely the single label "value" in the interrogation (instead of "intrinsic value") along with the definition actually given, doubtless the innocuousness of the error would be more apparent, but it is hardly to be believed that the additional word "intrinsic" would somehow blind the jury to the definition or render the latter difficult to understand or accept. The fact that the alternative method of submitting the two different ideas of value operated to bring an additional, and, under the Carpenter case erroneous, theory of value (actual market price) into the minds of the jurors, would not cause them to give a mistaken answer to the alternative issue clearly submitting the correct theory. The worst it might have done, would have been to cause them to find that an actual market price for the 4.57 acres existed and thus to leave unanswered the alternative issue (No. 2) on willing buyer and seller value. This, of course, did not occur. The latter issue was duly answered. The charge is not attacked as excluding from consideration in connection with Special Issue No. 2 such relevant evidence as there was about actual sales of land, nor do we find anything in the charge to this effect. The submission of Special Issue No. 1 itself, enquiring as to (in effect) the actual market price of the 4.57 acres, would not seem by inference to ex-

clude consideration of any relevant cases of actual sales of other property in determining (under Special Issue No. 2) what a willing buyer and seller price would be for the 4.57 acres. In brief, the effect of the charge, so far as concerns the above discussed issues, was a submission substantially in accord with State v. Carpenter.

Now all the foregoing seems conceded to be true, and yet we say that the formal error of merely labeling the willing buyer-willing seller test as "intrinsic value" and labeling current price as "market value" somehow probably did cause a relatively excessive verdict, because the definition of "intrinsic value" used the words "the price * * * the land *should* sell for" instead of "the price * * * the land *would* sell for" (the latter being the phrase used in the Carpenter case). I take it that if the definition had but said "would" instead of "should," the errors in question would be admittedly unsubstantial. In the first place, it appears somewhat strange thus to infer an excessive verdict, when the condemnor itself has not claimed the verdict to be excessive on the evidence, when we have sustained no assignment based on admission of evidence of the "speculative elements of damages," which the court apprehends to have been considered, and when no objection to the charge was grounded on this supposedly important difference between "should" and "would." Secondly, while the court does not say just what this difference is, even in "ordinary signification," much less as a matter of "distinction by lexicographers * * * and grammarians," I take the argument to be that "should" is so much more indefinite than "would" as probably to cause a larger verdict than would (or should) have been caused by "would." With all deference, I submit that such reasoning, as applied to a jury of other than professors of English, is somewhat fanciful. It isn't even sound as a matter of abstract thinking. Obviously any willing buyer-willing seller test is hypothetical, because the "sale" in question has not been made and never will be. The jury simply says what it *thinks* the price would be, if such a sale should occur at the time the verdict is rendered. When thus undoubtedly dealing with a mere opinion of the jury about an imaginary price, how can there be any substantial difference between what the price "would," or even "will," be and, on the other hand, what it "should," or "ought to," be? If we say that "should" invites the jury to indulge the possible prejudice that condemnors ought to be more generous than businesslike, we yet have in the definition itself the opposing element that the hypothetical price must be one agreeable to an uncompelled buyer. How can we say that the mere word "should" caused the jury to regard the uncompelled buyer in the defini-

tion as a person motivated by liberality rather than his own business interest? The very concept of an uncompelled buyer is to the contrary.

An additional point of the court is likewise without substance. Special Issue No. 1 (as to the existence of an actual market price) applied by its terms only to the 4.57-acre tract. It is said that a corresponding issue should have been submitted in connection with the valuation of the rest of the land of the respondent before and after the taking of the 4.57 acres (Special Issues Nos. 3-7). The effect of the omission was to deprive the jury of the chance to establish the existence and amount of an actual market price of the remaining land at the times specified, because Special Issues Nos. 6 and 7 (actual market price of the remaining land) were conditional upon No. 1, which would determine the existence *vel·non* of an actual market price only as to the 4.57 acres. The answer to this point is that Special Issue No. 1 was erroneous and unnecessary in the first place, and an identical additional issue would have been likewise, because the correct enquiry under the Carpenter case was, not actual price in an actual market, but the hypothetical "willing buyer and seller" price. The Carpenter case does not for every conceivable case exclude the possibility of an actual market price of land in terms like market quotations of wheat or cotton, but such a price obviously would be an unusual thing, and there cannot be said to be evidence of its existence in this case. Indeed, it is the very position of the petitioner City that it was error to submit the "wheat, cotton, and other commodities" type of market value, and if it was error to submit it as regards the 4.57 acres taken, it would have been equally error to submit it as regards the "before and after" valuation of the remainder of the condemnees' property.

It should perhaps be added that the foregoing views as to the innocuous character of the errors in connection with Special Issue No. 2 (valuation of the 4.57 acres taken) apply also in connection with Special Issues Nos. 3 and 4 ("before and after" valuation of the rest of condemnees' property). The use of the wrong term "intrinsic" in the actual questions was patently harmless in view of the definition just preceding the question in No. 2, which definition by its terms applied also to Nos. 3 and 4; and the mere fact that the jury was given a chance—which it did not accept—to find a wrong type of valuation is not more ground for reversal as regards Special Issues Nos. 3 and 4 than it is as regards Special Issue No. 2.

Opinion delevired March 31, 1954.

Rehearing overruled June 2, 1954.