STATE of Texas et al., Appellants,

v.

C. G. THOMPSON and Wife  Hilda Aerl
Thompson, Appellees.

No. 3371.

Court of Civil Appeals of Texas.

Waco.

April 26, 1956.

Rehearing Denied May 17, 1956.

Wilson & Cureton, Waco, for appellants.

Dunnam & Dunnam, Waco, for appellees.

McDONALD, Chief Justice.

This is a condemnation case. Parties will be referred to as in the Trial Court. Plaintiffs (McLennan County and the State of Texas) instituted this suit for the condemnation for highway purposes of 6.131 acres owned by defendants Thompson and wife, located near the town of Lorena in McLennan County. Trial was to a jury. The jury, in answer to special issues submitted, found that 1) the reasonable market value per acre of the 6.131 acres condemned and taken by the State for highway purposes was *$500 per acre,* and 2) the value of the balance of defendants' tract of land was not reduced by the taking of the 6.131 acres. Judgment was rendered in favor of the defendants in keeping with the jury verdict for $3,617.15 for the land taken.

Plaintiffs appeal seeking a reversal, contending: 1) That the Trial Court erred in admitting testimony of the value of the land for uses other than that to which it was being put at the time of taking, in that the evidence failed to show that any such uses were reasonably probable in the immediate future. 2) That the Trial Court erred in admitting evidence as to the front foot and per lot value of the land taken, as such property had never been subdivided and such values were too speculative, uncertain and remote. 3) That the court erred in defining the term "market value" in its charge. 4) The Trial Court erred in admitting evidence of unaccepted offers for the purchase of the land taken. 5) The Trial Court erred in permitting counsel for defendants to argue to the jury excluded evidence of unaccepted offers for the property taken. 6) The Trial Court refused to strike the testimony of the witness Moore as to the value of the land because such value was based on improper predicate, to-wit: unaccepted offers and knowledge of forced sales. 7) The Trial Court erred in permitting defendant Thompson to testify as to the price he paid to his brother-in-law for a 1.81 acre tract of land, which sale occurred after the institution of the condemnation proceedings. 8) The verdict of the jury was excessive.

Plaintiffs' first point complains of the action of the Trial Court in admitting testimony of the value of the land for uses other than that to which it was being put at the time of the taking, *for the reason, it is contended, that the evidence failed to show that any such uses were reasonably probable within the immediate future or a reasonable time after the taking.*

The evidence in the case shows that the 6.131 acres taken had never been used for any purpose other than farming. The evidence further showed that the property ran along Highway 81 for 1395 feet in length on the west side next to the highway and has a depth of 174 feet, *and that it was adaptable for and had a potential commercial and business purpose value.*

The plaintiffs' complaint is that in the foregoing state of the record—*and absent testimony that business and commercial uses of the property were reasonably probable within the immediate future or a reasonable time after the taking,* the Trial Court permitted testimony by defendants' witnesses as to the value of the property for business and commercial purposes.

The evidence shows that the property taken fronted on Highway 81, opposite three service stations, a TV and radio repair shop, and a cafe. The evidence further shows that the property was not only adaptable for, but *salable* for business purposes at the very time of the taking, and that *at that time* there was an actual demand for it for such purposes. In this connection the witness C. P. Shaffer, a real estate man who had made appraisals of farm and city property for the Home Owners Loan Corporation and other government units, testified:

"Q. *Was it salable property at that time? Salable for business purposes at that time?* A. *Yes sir.*"

The witness J. D. Moore testified that there was a demand for this property for business purposes in 1949; that he had tried to buy some locations in that year on the highway at Lorena for a client; that the defendants' property was not for sale at that time, but that it had a market value as business property if defendants had desired to sell.

■ From the foregoing we see that there *is* testimony in the record that the property taken had business and commercial uses *at the very time of the taking,* hence testimony as to the value of the property for business and commercial purposes was admissible.

Further, our Supreme Court has held that if the Trial Judge is satisfied from the evidence as a whole, which he was in the instant case, that the property would become available for additional uses in the reasonable future, he should admit testimony of present value based on prospective use of the property in the future. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808.

Plaintiffs contend in their 2nd point that the Trial Court erred in admitting evidence as to the *front foot* and *per lot* value of the land taken, as such property had never been subdivided, for which reason such values are too speculative, uncertain and remote to form a basis for determining value.

The Trial Court permitted the witness J. D. Moore to testify that the land taken was 174 feet deep, 1395 feet fronting along the highway and had a fair and reasonable market value of $5 a front foot or $250 for a 50 foot lot. The witness Henson testified that the market value of the land taken was $300 for a 50 foot lot or $6 a front foot. The witness Henson, however, additionally testified that the value of the 6.131 acres taken was approximately $1,400 per acre. The witness Henson further testified of new construction in Lorena, and the sale of lots for building purposes for $200 per lot; and that part of Lorena was subdivided and lots sold in the subdivided portion of Lorena on a front foot basis.

The witness C. P. Shaffer testified that the market value of the land taken was between $1,400 and $1,500 per acre. The witness Thompson testified the land taken had a market value of $1,500 per acre.

Plaintiff contends that since the property taken had only been used theretofore as farm land and had never been subdivided, that it was error on the part of the Trial Court to permit the evidence as to front foot value and per lot value.

As has been pointed out, one of the witnesses who testified as to front foot and per lot value further testified as to value on a per acre basis. His testimony as to value on a per acre basis is higher than would have been the per acre value of the other witness who testified to front foot and per lot value, had his testimony been calculated out on an acre basis. Further, there were at least two other witnesses who testified as to the value of the land taken on a per acre basis to be $1,400 or $1,500 per

acre, which testimony placed the valuation at the same figure per acre or more as did the testimony of the witnesses who testified on a per front foot or per lot basis. Moreover, there is testimony in the record that a part of Lorena was subdivided and that lots were sold in such subdivision by the lot, and on a front foot basis. The record fixes the size of Lorena so that this subdivision could not be far from the property taken in this condemnation proceeding.

■■ While we are not unmindful of the rule that opinion testimony as to front foot value of non existent lots is too speculative to be admitted as direct evidence of market value, still we cannot say that the admission of the testimony of Moore and Henson constitutes *reversible error* in this particular case. Under the provisions of Rules 434 and 503, Texas Rules of Civil Procedure, we must determine the harmfulness of the error by an examination of the entire record, and we should not order a reversal unless we are satisfied that the error "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, 193; Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808.

Since the testimony as to "front foot" and "per lot" value did not fix the value at a figure greater than that at which at least two other witnesses testified it to be; since one of the witnesses who testified as to *front foot* and *per lot* value further testified to value on an acreage basis; and since we hold that evidence of market value for uses as business and commercial property was proper in the case; and since business property does normally sell by front footage or in lots; and since nearby property in Lorena was in fact selling on a front foot and per lot basis; and since the verdict in the case fixed the value of the land taken at $500 per acre; and since the witnesses tendered by plaintiffs fixed such value up to $275 per acre and defendants' wit-

nesses fixed the value up to $1,500 per acre; and since there was evidence of at least one comparable sale at approximately $1,000 per acre; we cannot say, in the application of Rules 434 and 503, that the admission of the testimony complained of "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

■ Plaintiffs' 3rd point contends that the court's charge in defining the term *"market value"* failed to confine the jury to the particular uses for which the property had been used or to which it would probably be put within the near future.

The court's charge defined *"market value"* to be:

"The price for which land may be sold, *within a reasonable time*, by a person desiring to sell but not bound to do so, to a person who desires to purchase the same, but is not bound to do so."

In connection with its 3rd point as well as in connection with its 1st and 2nd points, plaintiffs rely on our Supreme Court's holding in City of Austin v. Cannizzo, supra. It is our view that the Cannizzo case avails plaintiffs nothing, and that it is not only not in conflict in anywise with this opinion, but that it in fact supports same. The Cannizzo case was concerned primarily with an incorrect submission, the court in that case having submitted the damage issue on the basis of *"intrinsic value."* The court held that under the holding in State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, 89 S.W.2d 979, and under the record in the Cannizzo case, that there were only three issues: 1) The *market value* of the land taken; 2) the market value of the remainder of the tract before the taking; and 3) after the taking.

In the case at bar the method of submission of the damage issues was on the basis of *market value* just as laid down in the Carpenter case.

Plaintiffs complain that the definition of market value as submitted by the court does

not conform to the definition as suggested in the Cannizzo case [153 Tex. 324, 267 S.W.2d 815], which is:

"You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.*"

The Trial Court's definition in the case at bar set the price for which the land may be sold *"within a reasonable time* by one desiring to sell but not bound to do so, to a person desiring to purchase but not bound to do so." We fail to perceive where in anywise the Trial Court's definition does violence to the definition suggested and approved by our Supreme Court. Our Supreme Court's definition is fuller, but is contradicted in no way by the Trial Court's definition in the case at bar. In fact, the definition as submitted by the Trial Court here *if* different in anywise, is more restrictive than that of our Supreme Court. In this connection it must be remembered that the evidence in the case at bar was to the effect that the land taken was in *demand as,* and was *salable for* business and commercial purposes at the *very time* that it was taken.

Plaintiffs' 4th point contends that the Trial Court erred in admitting evidence of unaccepted offers for the purchase of the land taken, and its 5th point alleges that counsel for defendants argued to the jury excluded evidence of unaccepted offers for the property in question.

■ The evidence of offers complained of is that the witness Moore offered to buy property at Lorena. This evidence was on re-cross examination of the witness Moore and is admissible in rebuttal to questions asked by plaintiffs' counsel implying that there was *no demand* for property around Lorena. The Trial Court, in any event, excluded all testimony of the amounts of money offered but not accepted for such property.

An examination of the argument made to the jury by defendants' counsel reveals that no improper statement was made.

■ Plaintiffs' 6th point is levelled at the refusal of the Trial Court to strike the testimony of the witness Moore as to the value of the land taken, for the reason that it was based in part upon his unaccepted offer to purchase, and knowledge of forced sales. The fact that the witness testified that he based his opinion of market value partly on his efforts to purchase the property in question or his knowledge of the sales of right-of-way property up and down the highway does not disqualify his testimony, but to the converse, it gives it greater reliability. Moreover, there is nothing in the record to indicate that the sale of the similar right-of-way property mentioned by Moore was a forced sale. Further, the matter complained of, if error, is harmless error.

■ Plaintiffs' 7th point complains of the Trial Court's action in permitting the defendant Thompson to testify as to the price he paid his brother-in-law for a 1.81 acre tract of land, which sale occurred subsequent to the institution of these condemnation proceedings. Defendant testified that he paid $1,550 for the 1.81 acre tract of property, similarly situated to the property in this suit. Plaintiffs' recourse here was not a groundless objection to this admissible evidence, but to argue its weight to the jury.

■ Plaintiffs' last point is that the verdict of the jury was excessive. The jury fixed the market value of the land taken at $500 per acre. The jury further found that the residue of defendants' land was *not* damaged by the taking of the 6.131 acres. The witnesses tendered by the plaintiffs fixed the value of the land taken up to $275 per acre. Defendants' witnesses fixed the value up to $1,500 per acre. There was evidence of sales of comparable property

at approximately $1,000 per acre. We cannot say as a matter of law, under all the facts and circumstances, that the $500 per acre value found by the jury is excessive.

It follows that all of plaintiffs' points are overruled and that the judgment of the Trial Court is affirmed.

TIREY and HALE, JJ., concur.