In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00008-CV

____________


SOUTHWESTERN BELL TELEPHONE COMPANY,

Appellant


V.


RADLER PAVILION LIMITED PARTNERSHIP, Appellee






On Appeal from the County Civil Court No. 4

Harris County, Texas

Trial Court Cause No. 670,013






O P I N I O N

 This appeal challenges an eminent domain award for property condemned for
communication services. Southwestern Bell's offer and the award from the special
commissioners were $37,642. The trial court awarded $538,234.38. We reverse and
remand.

Background


 On October 9, 1996, appellant, Southwestern Bell Telephone Company
(Southwestern Bell), acquired two easements located on a property owned by
appellee, Radler Pavilion Limited Partnership (Radler). The property is improved
with a 270,000 square-foot multi-tenant retail shopping center known as the Pavilion
on Post Oak Boulevard (Property). One easement consists of a 24-foot by 52-foot
site, encompassing 1,248 square feet, in the northwest corner of the property. 
Appellant constructed a remote terminal facility to be used for telephone, telegraph,
and communication services on this easement. The second easement consists of
access to the facility which allows personnel to cross the property to and from the
remote terminal site. 

 The main issue at trial was the market value of the easements. After hearing
experts from both sides, the trial court found in favor of Radler and awarded
$318,234.38 for easement rights and $220,000 for damages to the remainder of the
property. In its findings of facts, the trial court found: 

 (1) The market value of the Tract 1 easement as of the date of
taking was $46,800. 


 (2) The market value of the Tract 2 easement as of the date of
taking was $271,434.38. 


 (3) The diminution in value to Radler's remaining property,
caused by the taking of the Tract 1 easement and the Tract 2
easement, as of the date of taking, was $220,000. 

 In its conclusions of law, the trial court stated that:

 (1) Southwestern Bell is indebted to Radler for the sum of
$500,592.38 for the taking of the two easements and the
diminution in value of the remainder, being the difference
between the $538,234.38 in compensation due as of the date of
taking and the $37,642 award of the special commissioners
previously deposited in the registry of the court.


 (2) Southwestern Bell is indebted to Radler for prejudgment
interest on the $500,592.38 difference between the compensation
due and the deposited award of the special commissioners, at the
rate of 10% per annum simple from October 9, 1996, until the
date of judgment in this case. 


 (3) The indebtedness of Southwestern Bell to Radler, being the
balance of $500,592.38 in compensation still due, plus
prejudgment interest on that sum, shall bear interest at the rate of
10% per annum, compounded annually, from the date of
judgment until paid, for which Southwestern Bell is also indebted
to Plaintiff.


 In its additional findings of fact, the trial court found: 

 (22) As of the date of taking, the highest and best use of the
Property was a mixed-use development, consisting of a hotel,
office building, expanded retail complex and parking garage. 


 (23) The leases in existence as of the date of taking did not
preclude the property from being developed to is [sic] highest and
best use.


 (24) As of the date of taking, it was reasonably foreseeable that
the Property would be developed to its highest and best use. 


 (30) The acquisition of the Tract 1 and Tract 2 easements by
Southwestern Bell hinders the development of the Property to its
highest and best use.


 (31) The acquisition of the Tract 1 and Tract 2 easements by
Southwestern Bell displaced 64,080 square feet in the proposed
parking garage.


 (32) The cost to cure the displaced parking in the proposed
parking garage includes $60,075 for additional sitework, $96,120
for premium structural costs of the garage, $56,760 for
construction costs of an additional level of parking, and $7,045
for profit and overhead, resulting in total damages to the
remainder of the Property of $220,000. 


 In its additional conclusions of law, the trial court stated that:

 (2) As of the date of taking, plans for a mixed-use development
of the Property, consisting of a hotel, office building, expanded
retail complex and parking garage, were not speculative.


 In four issues on appeal, Southwestern Bell argues that the trial court erred: 
(1) by admitting expert testimony that was premised on a hypothetical use of the
property when the use of the property could not be initiated in the reasonable future;
and (2) in calculating prejudgment interest. 

Standard of Review


 Southwestern Bell argues that the trial court admitted inadmissible expert
testimony during the trial. The admission and exclusion of evidence is committed to
the trial court's sound discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750,
753 (Tex. 1995). A person seeking to reverse a judgment based on evidentiary error
need not prove that but for the error a different judgment would necessarily have been
rendered, but only that the error probably resulted in an improper judgment. Id. We
determine whether the case turns on the evidence admitted by reviewing the entire
record. See id. at 754.

Expert Testimony


 In its first point of error, Southwestern Bell argues that the trial court erred in
admitting Radler's expert valuation testimony. Specifically, Southwestern Bell
contends that the expert's testimony was inadmissible because it was based on a
speculative redevelopment plan for the Property.

 Patrick O'Connor, President of a real estate firm, served as Radler's sole
valuation expert at trial. Radler hired O'Connor in 1998 to analyze the feasibility of
retail and office at the property as of 1996. His opinion as to the highest and best use
consisted of building a "high-density multi-use property, which probably would
include retail office, hotel and perhaps some high-end condominium use with
structured parking, with parking toward the back of the property, likely." In arriving
at his opinion of highest and best use, among other things, O'Connor relied on a
feasibility study from another witness, John Keeling. By using the comparable sales
method, O'Connor estimated that the value of the Property was $43 per square foot.
He calculated that the value of the Tract 1 easement was $53,664, assuming a 100%
valuation. (1) As for the Tract 2 easement, part A, his valuation assessment assumed
that a parking garage would be built in the rear of the property. (2) He estimated that the
easement would have to be 30-feet wide, instead of 15-feet, (3) so that the parking
garage could be even with the property line. At 180-feet long, the part A easement
would equal 5,400 square feet. O'Connor again used a 100% valuation which totaled
$232,000. As for part B of Tract 2, he assumed it was 817-feet by 15-feet wide,
equaling 12,255 square feet. For this part of the Tract 2 easement, O'Connor used a
50% valuation which had a value of $263,483. 

 O'Connor then assumed that, because the easements would interfere with a
proposed parking garage, some parking spaces would be lost. He testified that
Southwestern Bell's easements would cause remainder damages of $2,034,000. He
testified that this amount was attributed to lost parking spaces, among other things.
However, instead of Southwestern Bell paying $2,034,000 attributable to lost spaces,
O'Connor testified to the cost to cure. By adding another floor to the proposed
parking garage, the remainder damages could be reduced to $250,000. This amount
was based in part from testimony given by Radler's construction expert, Michael
Towns. 


Analysis


 Market value is "the price the property will bring when offered for sale by one
who desires to sell, but is not obliged to sell, and is bought by one who desires to buy,
but is under no necessity of buying. City of Harlingen v. Estate of Sharboneau, 48
S.W.3d 177, 182 (Tex. 2001). The market value of property condemned is
determined as of the date of taking. Johnson v. State, 474 S.W.2d 327, 329 (Tex. Civ.
App.--Austin 1971, writ ref'd n.r.e.). The three traditional approaches to
determining market value are the comparable sales method, the cost method, and the
income method. Id. In the willing seller-willing buyer test of market value, it is
frequently said that all factors should be considered which would reasonably be given
weight in negotiations between a seller and a buyer. City of Austin v. Cannizzo, 267
S.W.2d 808, 814 (Tex. 1954). This analysis would exclude consideration of purely
speculative uses to which the property might be adaptable but which are wholly
unavailable; it would, however, permit consideration of all uses to which the property
was reasonably adaptable and for which it was, or in reasonable probability would
become, available within a reasonable time. Id. To warrant admission of testimony
as to the value of land for purposes other than that to which it is being put at the time
of the taking, it must first be shown: 

 1) That the property is adaptable to the other use.

 2) That the other use is reasonably probable within the
immediate future, or a reasonable time. 

 3) That the market value of the land has been enhanced
thereby. 

Id.


 Radler put on extensive evidence that meets prongs 1 and 3 of this test. 
However, we have not been directed to any evidence to show that Radler's
redevelopment was reasonably probable within the immediate future, or in a
reasonable time. See id. 

 In City of Harlingen v. Sharboneau, the Texas Supreme Court found that the
expert's testimony regarding the subdivision development method was not relevant
because it involved a number of "analytical steps, most involving assumptions and
estimates, any one of which could seriously affect the appraisal's accuracy." 48
S.W.3d at 184. In reversing the trial court's judgment, the court stated that the
valuation testimony "bypassed all of the problems that could appear during an actual
development, substituting instead the best possible outcome." Id. at 185. 

 As in Sharboneau, O'Connor's valuation testimony bypassed any problems
with redevelopment and instead, assumed that: (1) a redevelopment of the property
would occur; (2) a parking garage would be constructed; (3) the parking garage's
location would conflict with Southwestern Bell's easements; (4) another floor would
be added to the parking garage; and (5) the best possible outcome would occur
regarding the redevelopment of the Property. His testimony concerning the value of
the Tract 2 easement and the remainder damages was based on the speculative
assumption that a redevelopment of the property would occur, necessitating the
addition of a multi-level parking garage. This is precisely the type of testimony that
Sharboneau prohibits. See id. at 184-86. Moreover, the following evidence demonstrates that the conceptual
redevelopment was purely speculative and not the type of testimony that is admissible
in a condemnation proceeding. 

 John Keeling, a consultant expert to the hotel industry, testified that it would
have been feasible to build a five-star hotel in October 1996. He also testified that
it is possible that a five-star hotel would be built on the site. When asked if the hotel
would be built, he said he did not know.

 Michael Sheppard, an architect, testified that the property's highest and best
use was as a high-density mixed use development. As such, the property would need
"structured parking." He then detailed that the parking garage would have to be built
in the rear of the property, 30 feet away from the property line. When asked what
would actually be built on the property, Sheppard stated that he did not know. 
Sheppard also could not predict the actual square footage of the retail, office, or hotel
space. He further stated that there was no way of knowing whether the
redevelopment would ever be built. When asked whether he had actual plans to
redevelop the property, Mishael Radom, a limited partner in Radler, answered "No." 

 Texas Rule of Evidence 702 requires that all expert testimony, not just
scientific evidence, must be relevant and reliable before it is admitted. Gammill v.
Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998). Unreliable expert testimony is of
no evidentiary value. See Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 712
(Tex. 1997). Here, Radler presented expert testimony detailing how a redevelopment
of the Property could proceed. It is not enough, however, to show that the new use
is feasible; rather, it must be shown that the other use is reasonably probable within
the immediate future, or within a reasonable time. See City of Austin, 267 S.W.2d at
814. 

 The trial court accepted the assumption that a parking garage would be built
and awarded the cost to cure lost parking spaces. Awarding damages for a parking
garage that did not exist at the time of taking, and then awarding further damages for
non-existent lost parking spaces resulted in a windfall to Radler. Because
O'Connor's valuation testimony was based on a speculative redevelopment concept,
we conclude that his testimony was not relevant. See Sharboneau, 48 S.W.2d at 186. 
Accordingly, the trial court abused its discretion in admitting O'Connor's valuation
testimony concerning the value of the Tract 2 easement and any remainder damages. 

 We sustain appellant's first point of error. 



Harmful Error


 The improper admission of testimony is subject to Rule 44.1(a). Tex. R. App.
P. 44.1(a). We must reverse if the error caused the rendition of an improper
judgment. See id. The trial court found that the Tract 1 easement had a market value
of $46,800. This amount was based on testimony detailing the comparable sales
method. The trial court found that the Tract 2 easement had a market value of
$271,434.38 and that $220,000 should be awarded to cure the remainder damages to
the Property. Both of these amounts were based on valuation testimony given by
O'Connor. Because O'Connor's testimony was the only valuation evidence presented
by Radler to support the trial court's findings, the improper admission of his
testimony caused the rendition of an improper judgment.

Conclusion


 We reverse the judgment of the trial court and remand for further proceedings
consistent with this opinion. All outstanding motions are denied.



 Adele Hedges

 Justice

Panel consists of Justices Wilson, Hedges, and Jennings.

Publish. Tex. R. App. P. 47.
1. O'Connor determined a 100% valuation because the easement caused a
complete loss of the area to Radler. 
2. O'Connor divided the Tract 2 easement into two parts, part A and part B. 
3. Southwestern Bell estimated that the easement would be 15 feet wide. 
Radler's experts testified that the easement would have to be 30 feet wide.