TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00393-CV






Appellant, Anne Bryant Watkins// Cross-Appellant, Jane Bryant Shurley 


v.


Appellee, Jane Bryant Shurley// Cross-Appellee, Anne Bryant Watkins






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT

NO. C-03-1480-CA, HONORABLE BEN WOODWARD, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 This appeal arises out of a dispute among the beneficiaries and the trustee of a
family trust regarding the allocation of expenses and losses incurred by the trust. To resolve the
dispute, the beneficiaries of the trust, appellant and cross-appellee Anne Bryant Watkins and appellee
and cross-appellant Jane Bryant Shurley, entered into a rule 11 settlement agreement specifying the
manner in which the parties would divide the trust's assets into two separate trusts. The agreement
called for the appraisal and partition of the trust's assets by the trial court with the assistance of
a settlement administrator. Because neither party agrees with the valuation and partition of the
trust property as ordered by the trial court, they both appeal to this Court, each urging us to adopt and
apply their respective interpretations of the settlement agreement. Based on our determination that
the appraisal of the trust corpus does not conform to the parties' settlement agreement, we will
reverse the trial court's judgment and remand to the trial court for further proceedings consistent
with this opinion.


FACTUAL AND PROCEDURAL BACKGROUND

 In 1965, M.D. and Ethel C. Bryant and their two daughters, Anne and Jane, (1) created
a family trust, the corpus of which comprised two ranches--the 15,763-acre Marfa Ranch in
Presidio County and the 12,647-acre Spring Creek Ranch in Tom Green and Irion counties. Anne
and Jane's parents contributed 2/3 of the real property composing this family trust, and Anne and
Jane each contributed 1/6. Specifically, Anne contributed an undivided 7/12 interest in a 4,217-acre
tract of the Spring Creek Ranch, Jane contributed approximately 11,000 acres of the Marfa Ranch,
and their parents contributed the remainder of those two ranches. Anne and Jane have each owned
a ½ interest in the trust since their last remaining parent died in 1971.

 In 1992, Jane and her husband filed for bankruptcy. Two of Jane's creditors and
the bankruptcy trustee brought an adversary action in the bankruptcy proceeding seeking judgment
that Jane's ½ interest in the family trust was property of the bankruptcy estate. The family trust's
trustee spent approximately $2 million of trust money for attorney's fees and expenses defending
the family trust in the bankruptcy proceeding. Ultimately, the Fifth Circuit Court of Appeals held
that any property that Jane herself had contributed to the family trust was subject to the claims of
her creditors. See In re Shurley, 115 F.3d 333, 337 (5th Cir. 1997). (2) As a result of this ruling, the
11,000 acres from the Marfa Ranch that Jane had originally contributed to the trust were transferred
out of the trust's corpus to pay Jane's creditors.

 After several years, the family trust's trustee filed this suit, seeking a
judicial declaration regarding the proper allocation of the attorney's fees and expenses and of the
reduction in the trust corpus resulting from Jane's bankruptcy. Specifically, the trustee sought to tax
the trust's fees, expenses, and losses against Jane's interest in the trust. To resolve this litigation,
the parties entered into a settlement agreement to create a separate trust for each sister and to fund
those two separate trusts with the property from the family trust. The parties' settlement agreement
specified that the trust property would be appraised and partitioned between the new trusts as
follows: (1) Anne's original contribution to the trust--i.e., the undivided 7/12 interest in one tract
of the Spring Creek Ranch--would be transferred to her trust; (2) an agreed-upon appraiser would
assign a fair market value to the Marfa Ranch as a whole; (3) that same appraiser would, after
deducting Anne's undivided 7/12 interest in one tract, assign a fair market value to each individual
tract of the Spring Creek Ranch; (4) the Marfa Ranch would be transferred to Jane's new trust,
(5) the remaining Spring Creek Ranch would be transferred to Anne's trust, and (6) because the
Spring Creek Ranch was worth more than the Marfa Ranch, certain specified "equalization" tracts
from the Spring Creek Ranch would be transferred to Jane's new trust as needed to equalize the
fair market value of the properties held in each new trust.

 After the trial court approved their settlement agreement and they received a favorable
letter ruling from the Internal Revenue Service regarding the tax consequences of the settlement
agreement, the trial court appointed, at the request of the parties, a settlement administrator to
facilitate performance of the settlement agreement, including hiring the agreed appraiser, monitoring
the appraisal process, and submitting appraisal and partition recommendations to the court as needed. 

 The independent appraiser selected by the parties completed his appraisal of the
trust properties in June 2008. The appraiser, however, did not follow the settlement agreement's
instructions to value each individual tract of the Spring Creek Ranch because he "didn't think it
made any sense" to value a 12,647-acre ranch on a tract-by-tract basis. Instead, the appraiser valued
the Spring Creek Ranch as a whole--at $1,250 per acre--and only valued on a tract-by-tract basis
those tracts that were subject to the equalization provision of the agreement. The appraiser's per acre
values for the equalizations tracts were significantly higher than the $1,250 per acre value for the
whole ranch because "small tracts . . . sell for [a] higher price per acre than larger tracts." So, in an
"attempt to somehow resolve the difference in size between small properties and large ranches"
that resulted from valuing the ranch by two different appraisal methods, the appraiser applied a 30%
"size discount" to his values for the equalization tracts. This resulted in a value of approximately
$1,250 per acre for the equalization tracts. Also, to arrive at a value for the Spring Creek Ranch
minus Anne's original contribution, the appraiser first determined the value of the entire
Spring Creek Ranch and then "backed out" from that amount the value of Anne's original
contribution, which he determined by using the "whole-ranch" value of $1,250 per acre and then
applying a 30% discount to account for its fractional status. The remainder of the appraisal appears
to have been performed according to the parties' agreement.

 Jane and the settlement administrator agreed with the appraiser's methods and
asked the court to approve the proposed valuation and partition. Anne, however, objected to the
appraiser's value for the Spring Creek Ranch tract from which her undivided 7/12 interest was
deducted and to the "size discount" the appraiser applied to the equalization tracts. When the parties
were unable to resolve Anne's objections through mediation with the settlement administrator,
the settlement administrator filed his recommendation with the trial court, and the parties set the
matter for hearing.

 The issues before the trial court centered on the appraisal of the Spring Creek Ranch,
specifically Anne's objections to the appraisal and other issues related to the appraiser's failure
to appraise each tract of the Spring Creek Ranch. Rather than object to the appraiser's failure to
appraise each individual tract of Spring Creek Ranch, however, each party urged the trial court to
apply discounts and additions to the appraisal's values, presumably to correct or compensate for
that error. After hearing the arguments of counsel and the evidence, including the testimony of the
appraiser, the settlement administrator, and Anne's valuation expert, the trial court issued an order
valuing and partitioning the trust property. In doing so, the trial court excluded Anne's original
7/12 contribution from the appraisal process, but did not apply a fractional discount to the value of
the remaining undivided 5/12 interest to reflect its undivided status. The trial court also did not
apply the appraiser's "size discount" to the value of the equalization tracts to bring their per acre
values closer to the per acre value for the whole ranch. Both parties now appeal this order.


DISCUSSION

 The parties challenge the trial court's interpretation and application of their
settlement agreement. Specifically, they each assert that the trial court's construction of the
valuation provisions of the settlement agreement resulted in incorrect values for certain of the
Spring Creek Ranch tracts and, as a result, the trial court's partition of the trust corpus does not
comply with the provisions of their settlement agreement.


Standard of Review

 We construe settlement agreements according to the rules applicable to contract
interpretation. Cities of Abilene, San Angelo, & Vernon v. Public Util. Comm'n, 146 S.W.3d 742,
747 (Tex. App.--Austin 2004, no pet.). Our primary concern in construing a contract is to ascertain
the parties' intent as expressed in the instrument. Seagull Energy E & P, Inc. v. Eland Energy, Inc.,
207 S.W.3d 342, 345 (Tex. 2006). To ascertain those intentions, we examine the entire contract
in an effort to harmonize and give effect to all of its provisions so that none will be rendered
meaningless. Id. No single provision should be given controlling effect, but all provisions must be
construed in reference to the whole. Id. When a written contract is so worded that it can be given
a certain or definite legal meaning or interpretation, it is not ambiguous, and we must construe it as
a matter of law. American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). 


The Settlement Agreement

 The parties do not assert that the agreement is ambiguous. After a de novo review
for ambiguity, see Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003), we agree. The agreement
states that its purpose is "to avoid litigation and unnecessary expense" by settling the "disputed
claims" of the present suit. The disputed claims here involve the trustee's authority to allocate to
Jane's share of the trust the trust's losses from Jane's bankruptcy, including attorney's fees and the
removal of part of the Marfa Ranch--i.e., Jane's original contribution--from the trust assets. In
other words, the main dispute in this matter is how to compensate Anne for the losses incurred by
the trust as a result of Jane's bankruptcy.

 To settle these claims, the parties agreed on a specific and detailed plan to create
separate trusts for each sister that are funded from the assets of the family trust as follows:


1. [Anne's] share of the Trust shall receive her original contribution to the
Trust, which she represents to be approximately 2400 acres of the Spring
Creek Ranch . . . . After deducting this original contribution, the rest of the
surface estate in the Spring Creek Ranch and the Marfa Ranch shall be
divided into two shares of equal value, using current fair market values as
determined by the appraisals provided herein, one share for the benefit of
Anne . . . and one share for the benefit of Jane . . . as follows:


 a. Anne's Share shall receive all of the Spring Creek Ranch surface
estate . . . , save and except those tracts identified in paragraphs "b" and "c"
below, which may be distributed to Jane's Share as equalization.


 b. Jane's Share shall receive all of the Marfa Ranch surface estate. To the
extent additional surface acreage is needed to equalize the values of the
surface estates (after deducting Anne's original contribution of surface
acreage only), Jane's Share shall receive from the North East Quadrant of
Spring Creek Ranch in Exhibit B, in the following order, tracts identified as
River (284 a.), Lee Farm (245 a.), Rust (246 a), Feed (607 a.), parcels 15, 16
(115 a), 17, 18, 19 20, Rust (167 a.), and Twin Hills (675 a.).



So, to balance the bankruptcy loss of Jane's original contribution, the settlement agreement first
transfers Anne's original contribution--i.e., the undivided 7/12 interest in a Spring Creek Ranch
tract--from the family trust to Anne's new trust. The agreement then divides the remaining
trust assets equally between the two trusts based on the fair market value of those remaining assets
as determined by an appraiser. The settlement agreement also specifies how the appraisals are to be
performed:


The Spring Creek surface shall be appraised by tract as these tracts are reflected on
Exhibit B, by a mutually agreed upon appraiser. The Marfa Ranch surface shall be
appraised as a single unit by a mutually agreed upon appraiser. . . . (3)



Thus, the parties' settlement agreement establishes a specific, linear process for valuing and dividing
the trust's assets into two new trusts. First, Anne's original contribution is "deducted" from the
trust corpus and transferred to her new trust--i.e., it is treated as if it, too, were lost to the trust
through bankruptcy. Next, the assets remaining in the trust are appraised--the Marfa Ranch is
appraised as a whole and the Spring Creek Ranch is appraised by tract. Finally, the assets remaining
in the trust are divided equally between the two new trusts based on their fair market value as
determined by the appraiser and in the following order: the Marfa Ranch is transferred to Jane's
new trust, the remaining Spring Creek Ranch is transferred to Anne's new trust, and to the extent
necessary to balance the equal division of the trust, based on the fair market value of the properties,
certain specified tracts of the Spring Creek Ranch--i.e., the equalization tracts--may be transferred
to Jane's new trust.


Valuation of the 5/12 Interest

 Anne's single issue on appeal challenges the trial court's valuation of the undivided
5/12 interest in the Spring Creek Ranch tract remaining after Anne's original contribution to the
trust--i.e., the undivided 7/12 interest in that same tract--was deducted. Specifically, Anne
contends that because the interest being appraised is an undivided interest in property, the trial court
should have applied a discount to the appraiser's value to account for the interest's undivided status. 

 An undivided interest in property is a form of concurrent ownership that exists
when there are two or more owners of the same property at the same time. See 7 Richard R. Powell,
Powell on Real Property § 50.01[1] (Michael Allen Wolf ed. 2008). The chief attribute of an
undivided interest is that the co-owners share a single right of possession of the entire interest, but
they each have separate claims to fractional shares of property that are undivided--i.e., they are not
assigned to a particular portion of the property. Id. Because each fractional share may ultimately
be satisfied out of any portion of the whole property, each co-tenant, regardless of the size of the
fractional share, has a right to possess the whole. Id.

 Both the settlement administrator and the appraiser here testified that the undivided
5/12 interest in the Spring Creek Ranch is worth less than a divided 5/12 interest in that same tract
would be worth because, in part, each undivided interest has a right to possession of the whole tract.
Nevertheless, the trial court treated the undivided 5/12 interest as if it were a divided interest--i.e.,
owned by one person--by not applying a fractional interest discount to its value. The trial court's
stated reason for not applying the discount was that Anne's share of the trust would eventually own
both the undivided 5/12 interest and the undivided 7/12 interest. Anne asserts that this method of
valuation is contrary to the parties' settlement agreement because the agreement requires the
appraiser to assign a fair market value to the trust property after Anne's original contribution of the
undivided 7/12 interest is deducted from the trust property. This, Anne argues, means that only the
undivided 5/12 interest is subject to valuation, and the fair market value of an undivided interest is
less than a divided interest in the same property. We agree.

 The settlement agreement specifies that Anne's original contribution must be
deducted from the trust assets before those remaining trust assets are appraised or divided: "After
deducting this original contribution, the rest of [the assets] shall be divided . . . using fair market
values as determined by the appraisals" and "to equalize the values . . . after deducting Anne's
original contribution . . . ." This language indicates that the parties intended to remove Anne's
original contribution from the appraisal and partition process to mimic or balance the fact that
Jane's original contribution was lost in the bankruptcy suit. Thus, the first step in the creation of
two new trusts is to remove Anne's original contribution from the process and treat it as if it were
not present. Once this is done--i.e., the undivided 7/12 interest in the 4,217-acre Spring Creek
Ranch tract is removed from the trust--what remains in the trust is the corresponding undivided
5/12 interest in that same tract. Accordingly, the appraiser must determine the fair market value of
the undivided 5/12 interest without regard to the undivided 7/12 interest.

 "Fair market value" attempts to ascertain the price a willing buyer would pay to
a willing seller on the open market if the seller and buyer were not compelled to enter into
the transaction. State v. Windham, 837 S.W.2d 73, 77 (Tex. 1992). It is, by its very nature, a
hypothetical determination--"an imaginary price to be paid by an imaginary buyer to an imaginary
seller in an imaginary sale." City of Austin v. Cannizzo, 267 S.W.2d 808, 816 (Tex. 1954)
(Garwood, J. dissenting). The sale in question "has not been made and never will be," id. at 818,
and the seller and the buyer are unidentified. Further, Texas courts have long held that it is
appropriate to consider "all factors . . . which would reasonably be given weight in negotiations
between a seller and a buyer" of the property in arriving at a fair market value. Cannizzo,
267 S.W.2d at 813-14; State v. Carpenter, 89 S.W.2d 194, 200 (Tex. 1936) ("Generally, it may be
said that it is proper as touching the matter of the value and depreciation in value to admit evidence
upon all such matters as suitability and adaptability, surroundings, conditions before and after,
and all circumstances which tend to increase or diminish the present market value."). Thus, to arrive
at the fair market value required here, the appraiser must determine the price at which a hypothetical
unobligated seller would sell the undivided 5/12 interest in the tract to a hypothetical unobligated
buyer, whom the appraiser must assume will consider the size, ownership interest, and various
other conditions of the property being conveyed in determining what he is willing to pay for that
tract. See Spindor v. Lo-Vaca Gathering Co., 529 S.W.2d 63, 65 (Tex. 1975) (noting that a
"hypothetical willing buyer-willing seller would take [relevant factors related to certain property]
into consideration in negotiating for the purchase of that property"). Here, the settlement agreement
provides that the undivided 7/12 interest be removed from the appraisal process. Thus, because the
agreement requires a division based on fair market value, the appraiser must value the undivided
5/12 interest on its own, taking into account its fractional undivided status without regard to who
owns or will eventually own the undivided 7/12 interest in that tract.

 In the present case, both the settlement administrator and the appraiser, despite
acknowledging that a lack-of-marketability discount would generally be appropriate for a fractional
interest such as the undivided 5/12 interest, testified that the appraisal did not include such a discount
because the trust owned the other portion of the fractional interest and the two fractional interests
would be paired to make a whole interest once the new trust was created. Thus, rather than value
the undivided 5/12 interest according to the amount a hypothetical seller would sell it to a
hypothetical buyer, the appraisal valued the interest according to what the owner of the undivided
7/12 interest would pay for the undivided 5/12 interest. This methodology does not provide a
fair market value of the undivided 5/12 interest. Further, the valuation method does not treat Anne's
original contribution as if it had been deducted from the trust as the settlement agreement instructs.
Accordingly, the appraisal of the undivided 5/12 interest did not comply with parties' agreement and,
as a result, it was error for the trial court to adopt its value in partitioning the trust's assets.


Equalization Tracts

 Jane's two issues also challenge the trial court's valuation of the Spring Creek Ranch,
but her focus on appeal is the values assigned to the equalization tracts. Jane contends that the
trial court erred when it used an "individual-tract" value for the equalization tracts that were
transferred to her trust, but used a "whole-ranch" value of $1,250 per acre for those equalization
tracts that remained in Anne's new trust. According to Jane, this resulted in an unequal partition
of the trust property. To solve this inequity, Jane asserts as her first issue that the trial court
should have valued all of the equalization tracts at their individual tract value or that, as her
second issue in the alternative, the trial court should have applied a size discount to the equalization
tracts so that they would be comparable to the whole-ranch value of $1,250 per acre. While we agree
that it was error for the trial court to use values for the equalization tracts that were arrived at through
valuation methods different from those set forth in the parties' agreement, we disagree with her
characterization of the error.

 Jane characterizes this as an error by the trial court regarding its valuation of the
equalization tracts or its failure to apply a "size discount" to the equalization tracts using the values
in the appraisal. The error here, however, actually resulted from the appraiser's failure to appraise
the Spring Creek Ranch on a tract-by-tract basis as directed by the parties' settlement agreement.
Both parties agreed that the appraisal of the Spring Creek Ranch did not conform to the
settlement agreement's express terms, but they did not agree on how to correct the appraisal's values.
Nevertheless, they urged the trial court to craft a division using the nonconforming appraisal,
with each party proposing various deductions and additions to the values to rectify the appraisal's
deficiencies. But the express terms of the parties' agreement require a division of trust property
based on a fair market value for each tract of the Spring Creek Ranch. Therefore, absent an
additional agreement by the parties on how to use the nonconforming appraisal, it was error for the
trial court to divide the trust property based on an appraisal that did not conform to the parties'
settlement agreement. Accordingly, we sustain Jane's issues on appeal. (4)


CONCLUSION

 Having determined that the appraisal of the Spring Creek Ranch does not conform
to the requirements of the parties' settlement agreement, we sustain both Anne's and Jane's issues
on appeal and reverse the judgment of the trial court. Further, because a conforming appraisal is
necessary for a proper partition, we remand this cause to the trial court for a new appraisal of the
Spring Creek Ranch and partition of the trust properties consistent with this opinion and the parties'
settlement agreement.



 __________________________________________

 Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Remanded

Filed: February 4, 2010
1. We will follow the settlement agreement's practice of using "Anne" and "Jane" when
referring to the parties.
2. Although the Bryant family trust included a spendthrift provision, which protects the
beneficiaries' interests in the trust from claims of the beneficiaries' creditors while the corpus and
income are held by the trustee, the Fifth Circuit held that interest is not protected to the extent that
the beneficiary also created the trust. See In re Shurley, 115 F.3d 333, 337 (5th Cir. 1997).
3. Exhibit B is a map of the entire Spring Creek Ranch that shows the boundaries for the
individual tracts of land that make up that ranch.
4. We note that, as discussed previously, a fair market value of each tract of the reduced
Spring Creek Ranch should account for all factors--e.g., fractional interest, size, location,
water sources, etc.--that would be relevant in a hypothetical sale of each tract between a willing
buyer and a willing selling.