# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00393-CV

**Appellant, Anne Bryant Watkins// Cross-Appellant, Jane Bryant Shurley**

**v.**

**Appellee, Jane Bryant Shurley// Cross-Appellee, Anne Bryant Watkins**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT NO. C-03-1480-CA, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a dispute among the beneficiaries and the trustee of a family trust regarding the allocation of expenses and losses incurred by the trust. To resolve the dispute, the beneficiaries of the trust, appellant and cross-appellee Anne Bryant Watkins and appellee and cross-appellant Jane Bryant Shurley, entered into a rule 11 settlement agreement specifying the manner in which the parties would divide the trust's assets into two separate trusts. The agreement called for the appraisal and partition of the trust's assets by the trial court with the assistance of a settlement administrator. Because neither party agrees with the valuation and partition of the trust property as ordered by the trial court, they both appeal to this Court, each urging us to adopt and apply their respective interpretations of the settlement agreement. Based on our determination that the appraisal of the trust corpus does not conform to the parties' settlement agreement, we will

reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1965, M.D. and Ethel C. Bryant and their two daughters, Anne and Jane,[1] created a family trust, the corpus of which comprised two ranches—the 15,763-acre Marfa Ranch in Presidio County and the 12,647-acre Spring Creek Ranch in Tom Green and Irion counties. Anne and Jane's parents contributed 2/3 of the real property composing this family trust, and Anne and Jane each contributed 1/6. Specifically, Anne contributed an undivided 7/12 interest in a 4,217-acre tract of the Spring Creek Ranch, Jane contributed approximately 11,000 acres of the Marfa Ranch, and their parents contributed the remainder of those two ranches. Anne and Jane have each owned a ½ interest in the trust since their last remaining parent died in 1971.

In 1992, Jane and her husband filed for bankruptcy. Two of Jane's creditors and the bankruptcy trustee brought an adversary action in the bankruptcy proceeding seeking judgment that Jane's ½ interest in the family trust was property of the bankruptcy estate. The family trust's trustee spent approximately $2 million of trust money for attorney's fees and expenses defending the family trust in the bankruptcy proceeding. Ultimately, the Fifth Circuit Court of Appeals held that any property that Jane herself had contributed to the family trust was subject to the claims of her creditors. *See In re Shurley*, 115 F.3d 333, 337 (5th Cir. 1997).[2] As a result of this ruling, the

---

[1] We will follow the settlement agreement's practice of using "Anne" and "Jane" when referring to the parties.

[2] Although the Bryant family trust included a spendthrift provision, which protects the beneficiaries' interests in the trust from claims of the beneficiaries' creditors while the corpus and

2

11,000 acres from the Marfa Ranch that Jane had originally contributed to the trust were transferred out of the trust's corpus to pay Jane's creditors.

After several years, the family trust's trustee filed this suit, seeking a judicial declaration regarding the proper allocation of the attorney's fees and expenses and of the reduction in the trust corpus resulting from Jane's bankruptcy. Specifically, the trustee sought to tax the trust's fees, expenses, and losses against Jane's interest in the trust. To resolve this litigation, the parties entered into a settlement agreement to create a separate trust for each sister and to fund those two separate trusts with the property from the family trust. The parties' settlement agreement specified that the trust property would be appraised and partitioned between the new trusts as follows: (1) Anne's original contribution to the trust—i.e., the undivided 7/12 interest in one tract of the Spring Creek Ranch—would be transferred to her trust; (2) an agreed-upon appraiser would assign a fair market value to the Marfa Ranch as a whole; (3) that same appraiser would, after deducting Anne's undivided 7/12 interest in one tract, assign a fair market value to each individual tract of the Spring Creek Ranch; (4) the Marfa Ranch would be transferred to Jane's new trust, (5) the remaining Spring Creek Ranch would be transferred to Anne's trust, and (6) because the Spring Creek Ranch was worth more than the Marfa Ranch, certain specified "equalization" tracts from the Spring Creek Ranch would be transferred to Jane's new trust as needed to equalize the fair market value of the properties held in each new trust.

income are held by the trustee, the Fifth Circuit held that interest is not protected to the extent that the beneficiary also created the trust. *See In re Shurley*, 115 F.3d 333, 337 (5th Cir. 1997).

After the trial court approved their settlement agreement and they received a favorable letter ruling from the Internal Revenue Service regarding the tax consequences of the settlement agreement, the trial court appointed, at the request of the parties, a settlement administrator to facilitate performance of the settlement agreement, including hiring the agreed appraiser, monitoring the appraisal process, and submitting appraisal and partition recommendations to the court as needed.

The independent appraiser selected by the parties completed his appraisal of the trust properties in June 2008. The appraiser, however, did not follow the settlement agreement's instructions to value each individual tract of the Spring Creek Ranch because he "didn't think it made any sense" to value a 12,647-acre ranch on a tract-by-tract basis. Instead, the appraiser valued the Spring Creek Ranch as a whole—at $1,250 per acre—and only valued on a tract-by-tract basis those tracts that were subject to the equalization provision of the agreement. The appraiser's per acre values for the equalizations tracts were significantly higher than the $1,250 per acre value for the whole ranch because "small tracts . . . sell for [a] higher price per acre than larger tracts." So, in an "attempt to somehow resolve the difference in size between small properties and large ranches" that resulted from valuing the ranch by two different appraisal methods, the appraiser applied a 30% "size discount" to his values for the equalization tracts. This resulted in a value of approximately $1,250 per acre for the equalization tracts. Also, to arrive at a value for the Spring Creek Ranch minus Anne's original contribution, the appraiser first determined the value of the entire Spring Creek Ranch and then "backed out" from that amount the value of Anne's original contribution, which he determined by using the "whole-ranch" value of $1,250 per acre and then

4

applying a 30% discount to account for its fractional status.  The remainder of the appraisal appears to have been performed according to the parties' agreement.

Jane and the settlement administrator agreed with the appraiser's methods and asked the court to approve the proposed valuation and partition.  Anne, however, objected to the appraiser's value for the Spring Creek Ranch tract from which her undivided 7/12 interest was deducted and to the "size discount" the appraiser applied to the equalization tracts.  When the parties were unable to resolve Anne's objections through mediation with the settlement administrator, the settlement administrator filed his recommendation with the trial court, and the parties set the matter for hearing.

The issues before the trial court centered on the appraisal of the Spring Creek Ranch, specifically Anne's objections to the appraisal and other issues related to the appraiser's failure to appraise each tract of the Spring Creek Ranch.  Rather than object to the appraiser's failure to appraise each individual tract of Spring Creek Ranch, however, each party urged the trial court to apply discounts and additions to the appraisal's values, presumably to correct or compensate for that error.  After hearing the arguments of counsel and the evidence, including the testimony of the appraiser, the settlement administrator, and Anne's valuation expert, the trial court issued an order valuing and partitioning the trust property.  In doing so, the trial court excluded Anne's original 7/12 contribution from the appraisal process, but did not apply a fractional discount to the value of the remaining undivided 5/12 interest to reflect its undivided status.  The trial court also did not apply the appraiser's "size discount" to the value of the equalization tracts to bring their per acre values closer to the per acre value for the whole ranch.  Both parties now appeal this order.

5

The parties challenge the trial court's interpretation and application of their settlement agreement. Specifically, they each assert that the trial court's construction of the valuation provisions of the settlement agreement resulted in incorrect values for certain of the Spring Creek Ranch tracts and, as a result, the trial court's partition of the trust corpus does not comply with the provisions of their settlement agreement.

## Standard of Review

We construe settlement agreements according to the rules applicable to contract interpretation. *Cities of Abilene, San Angelo, & Vernon v. Public Util. Comm'n*, 146 S.W.3d 742, 747 (Tex. App.—Austin 2004, no pet.). Our primary concern in construing a contract is to ascertain the parties' intent as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To ascertain those intentions, we examine the entire contract in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id.* No single provision should be given controlling effect, but all provisions must be construed in reference to the whole. *Id.* When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we must construe it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

## The Settlement Agreement

The parties do not assert that the agreement is ambiguous. After a de novo review for ambiguity, *see Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003), we agree. The agreement

6

states that its purpose is "to avoid litigation and unnecessary expense" by settling the "disputed claims" of the present suit. The disputed claims here involve the trustee's authority to allocate to Jane's share of the trust the trust's losses from Jane's bankruptcy, including attorney's fees and the removal of part of the Marfa Ranch—i.e., Jane's original contribution—from the trust assets. In other words, the main dispute in this matter is how to compensate Anne for the losses incurred by the trust as a result of Jane's bankruptcy.

To settle these claims, the parties agreed on a specific and detailed plan to create separate trusts for each sister that are funded from the assets of the family trust as follows:

1. [Anne's] share of the Trust shall receive her original contribution to the Trust, which she represents to be approximately 2400 acres of the Spring Creek Ranch . . . . After deducting this original contribution, the rest of the surface estate in the Spring Creek Ranch and the Marfa Ranch shall be divided into two shares of equal value, using current fair market values as determined by the appraisals provided herein, one share for the benefit of Anne . . . and one share for the benefit of Jane . . . as follows:

   a. Anne's Share shall receive all of the Spring Creek Ranch surface estate . . . , save and except those tracts identified in paragraphs "b" and "c" below, which may be distributed to Jane's Share as equalization.

   b. Jane's Share shall receive all of the Marfa Ranch surface estate. To the extent additional surface acreage is needed to equalize the values of the surface estates (after deducting Anne's original contribution of surface acreage only), Jane's Share shall receive from the North East Quadrant of Spring Creek Ranch in Exhibit B, in the following order, tracts identified as River (284 a.), Lee Farm (245 a.), Rust (246 a), Feed (607 a.), parcels 15, 16 (115 a), 17, 18, 19 20, Rust (167 a.), and Twin Hills (675 a.).

So, to balance the bankruptcy loss of Jane's original contribution, the settlement agreement first transfers Anne's original contribution—i.e., the undivided 7/12 interest in a Spring Creek Ranch

tract—from the family trust to Anne's new trust. The agreement then divides the *remaining* trust assets equally between the two trusts based on the fair market value of those *remaining* assets as determined by an appraiser. The settlement agreement also specifies how the appraisals are to be performed:

> The Spring Creek surface shall be appraised by tract as these tracts are reflected on Exhibit B, by a mutually agreed upon appraiser. The Marfa Ranch surface shall be appraised as a single unit by a mutually agreed upon appraiser. . . .[3]

Thus, the parties' settlement agreement establishes a specific, linear process for valuing and dividing the trust's assets into two new trusts. First, Anne's original contribution is "deducted" from the trust corpus and transferred to her new trust—i.e., it is treated as if it, too, were lost to the trust through bankruptcy. Next, the assets remaining in the trust are appraised—the Marfa Ranch is appraised as a whole and the Spring Creek Ranch is appraised by tract. Finally, the assets remaining in the trust are divided equally between the two new trusts based on their fair market value as determined by the appraiser and in the following order: the Marfa Ranch is transferred to Jane's new trust, the remaining Spring Creek Ranch is transferred to Anne's new trust, and to the extent necessary to balance the equal division of the trust, based on the fair market value of the properties, certain specified tracts of the Spring Creek Ranch—i.e., the equalization tracts—may be transferred to Jane's new trust.

---

[3] Exhibit B is a map of the entire Spring Creek Ranch that shows the boundaries for the individual tracts of land that make up that ranch.

8

**Valuation of the 5/12 Interest**

Anne's single issue on appeal challenges the trial court's valuation of the undivided 5/12 interest in the Spring Creek Ranch tract remaining after Anne's original contribution to the trust—i.e., the undivided 7/12 interest in that same tract—was deducted. Specifically, Anne contends that because the interest being appraised is an undivided interest in property, the trial court should have applied a discount to the appraiser's value to account for the interest's undivided status.

An undivided interest in property is a form of concurrent ownership that exists when there are two or more owners of the same property at the same time. *See* 7 Richard R. Powell, *Powell on Real Property* § 50.01[1] (Michael Allen Wolf ed. 2008). The chief attribute of an undivided interest is that the co-owners share a single right of possession of the entire interest, but they each have separate claims to fractional shares of property that are undivided—i.e., they are not assigned to a particular portion of the property. *Id.* Because each fractional share may ultimately be satisfied out of any portion of the whole property, each co-tenant, regardless of the size of the fractional share, has a right to possess the whole. *Id.*

Both the settlement administrator and the appraiser here testified that the undivided 5/12 interest in the Spring Creek Ranch is worth less than a divided 5/12 interest in that same tract would be worth because, in part, each undivided interest has a right to possession of the whole tract. Nevertheless, the trial court treated the undivided 5/12 interest as if it were a divided interest—i.e., owned by one person—by not applying a fractional interest discount to its value. The trial court's stated reason for not applying the discount was that Anne's share of the trust would eventually own both the undivided 5/12 interest and the undivided 7/12 interest. Anne asserts that this method of

9

valuation is contrary to the parties' settlement agreement because the agreement requires the appraiser to assign a fair market value to the trust property *after* Anne's original contribution of the undivided 7/12 interest is deducted from the trust property. This, Anne argues, means that only the undivided 5/12 interest is subject to valuation, and the fair market value of an undivided interest is less than a divided interest in the same property. We agree.

The settlement agreement specifies that Anne's original contribution must be deducted from the trust assets before those remaining trust assets are appraised or divided: "After deducting this original contribution, the rest of [the assets] shall be divided . . . using fair market values as determined by the appraisals" and "to equalize the values . . . after deducting Anne's original contribution . . . ." This language indicates that the parties intended to remove Anne's original contribution from the appraisal and partition process to mimic or balance the fact that Jane's original contribution was lost in the bankruptcy suit. Thus, the first step in the creation of two new trusts is to remove Anne's original contribution from the process and treat it as if it were not present. Once this is done—i.e., the undivided 7/12 interest in the 4,217-acre Spring Creek Ranch tract is removed from the trust—what remains in the trust is the corresponding undivided 5/12 interest in that same tract. Accordingly, the appraiser must determine the fair market value of the undivided 5/12 interest without regard to the undivided 7/12 interest.

"Fair market value" attempts to ascertain the price a willing buyer would pay to a willing seller on the open market if the seller and buyer were not compelled to enter into the transaction. *State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992). It is, by its very nature, a hypothetical determination—"an imaginary price to be paid by an imaginary buyer to an imaginary

10

seller in an imaginary sale." *City of Austin v. Cannizzo*, 267 S.W.2d 808, 816 (Tex. 1954) (Garwood, J. dissenting). The sale in question "has not been made and never will be," *id.* at 818, and the seller and the buyer are unidentified. Further, Texas courts have long held that it is appropriate to consider "all factors . . . which would reasonably be given weight in negotiations between a seller and a buyer" of the property in arriving at a fair market value. *Cannizzo*, 267 S.W.2d at 813-14; *State v. Carpenter*, 89 S.W.2d 194, 200 (Tex. 1936) ("Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value."). Thus, to arrive at the fair market value required here, the appraiser must determine the price at which a hypothetical unobligated seller would sell the undivided 5/12 interest in the tract to a hypothetical unobligated buyer, whom the appraiser must assume will consider the size, ownership interest, and various other conditions of the property being conveyed in determining what he is willing to pay for that tract. *See Spindor v. Lo-Vaca Gathering Co.*, 529 S.W.2d 63, 65 (Tex. 1975) (noting that a "hypothetical willing buyer-willing seller would take [relevant factors related to certain property] into consideration in negotiating for the purchase of that property"). Here, the settlement agreement provides that the undivided 7/12 interest be removed from the appraisal process. Thus, because the agreement requires a division based on fair market value, the appraiser must value the undivided 5/12 interest on its own, taking into account its fractional undivided status without regard to who owns or will eventually own the undivided 7/12 interest in that tract.

In the present case, both the settlement administrator and the appraiser, despite acknowledging that a lack-of-marketability discount would generally be appropriate for a fractional interest such as the undivided 5/12 interest, testified that the appraisal did not include such a discount because the trust owned the other portion of the fractional interest and the two fractional interests would be paired to make a whole interest once the new trust was created. Thus, rather than value the undivided 5/12 interest according to the amount a hypothetical seller would sell it to a hypothetical buyer, the appraisal valued the interest according to what the owner of the undivided 7/12 interest would pay for the undivided 5/12 interest. This methodology does not provide a fair market value of the undivided 5/12 interest. Further, the valuation method does not treat Anne's original contribution as if it had been deducted from the trust as the settlement agreement instructs. Accordingly, the appraisal of the undivided 5/12 interest did not comply with parties' agreement and, as a result, it was error for the trial court to adopt its value in partitioning the trust's assets.

**Equalization Tracts**

Jane's two issues also challenge the trial court's valuation of the Spring Creek Ranch, but her focus on appeal is the values assigned to the equalization tracts. Jane contends that the trial court erred when it used an "individual-tract" value for the equalization tracts that were transferred to her trust, but used a "whole-ranch" value of $1,250 per acre for those equalization tracts that remained in Anne's new trust. According to Jane, this resulted in an unequal partition of the trust property. To solve this inequity, Jane asserts as her first issue that the trial court should have valued all of the equalization tracts at their individual tract value or that, as her second issue in the alternative, the trial court should have applied a size discount to the equalization

tracts so that they would be comparable to the whole-ranch value of $1,250 per acre. While we agree that it was error for the trial court to use values for the equalization tracts that were arrived at through valuation methods different from those set forth in the parties' agreement, we disagree with her characterization of the error.

Jane characterizes this as an error by the trial court regarding its valuation of the equalization tracts or its failure to apply a "size discount" to the equalization tracts using the values in the appraisal. The error here, however, actually resulted from the appraiser's failure to appraise the Spring Creek Ranch on a tract-by-tract basis as directed by the parties' settlement agreement. Both parties agreed that the appraisal of the Spring Creek Ranch did not conform to the settlement agreement's express terms, but they did not agree on how to correct the appraisal's values. Nevertheless, they urged the trial court to craft a division using the nonconforming appraisal, with each party proposing various deductions and additions to the values to rectify the appraisal's deficiencies. But the express terms of the parties' agreement require a division of trust property based on a fair market value for each tract of the Spring Creek Ranch. Therefore, absent an additional agreement by the parties on how to use the nonconforming appraisal, it was error for the trial court to divide the trust property based on an appraisal that did not conform to the parties' settlement agreement. Accordingly, we sustain Jane's issues on appeal.[4]

---

[4] We note that, as discussed previously, a fair market value of each tract of the reduced Spring Creek Ranch should account for all factors—e.g., fractional interest, size, location, water sources, etc.—that would be relevant in a hypothetical sale of each tract between a willing buyer and a willing selling.

13

## CONCLUSION

Having determined that the appraisal of the Spring Creek Ranch does not conform to the requirements of the parties' settlement agreement, we sustain both Anne's and Jane's issues on appeal and reverse the judgment of the trial court. Further, because a conforming appraisal is necessary for a proper partition, we remand this cause to the trial court for a new appraisal of the Spring Creek Ranch and partition of the trust properties consistent with this opinion and the parties' settlement agreement.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Remanded

Filed:   February 4, 2010